# United States Court of Appeals for the Federal Circuit

2007-1230

AD HOC SHRIMP TRADE ACTION COMMITTEE,
VERSAGGI SHRIMP CORPORATION,
and INDIAN RIDGE SHRIMP COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

EASTERN FISH COMPANY, INC.,

Defendant-Appellee.

Bradford L. Ward, Dewey Ballantine LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Rory F. Quirk, Mayur R. Patel, and Lisa W. Wang.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Michael J. Coursey, Kelley Drye Collier Shannon, of Washington, DC, argued for defendant-appellee Eastern Fish Company, Inc. Of counsel was Mary T. Staley.

Appealed from: United States Court of International Trade

Judge Timothy C. Stanceu

# United States Court of Appeals for the Federal Circuit

2007-1230

AD HOC SHRIMP TRADE ACTION COMMITTEE,
VERSAGGI SHRIMP CORPORATION,
and INDIAN RIDGE SHRIMP COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

EASTERN FISH COMPANY, INC.

Defendant-Appellee.

Appeal from the United States Court of International Trade
in consolidated case no. 05-00192, Judge Timothy C. Stanceu

_____

DECIDED: February 15, 2008

_____

Before NEWMAN, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

GAJARSA, <u>Circuit Judge</u>.

This is a trade case dealing with the scope of an antidumping investigation and the trial court's authority to review the final scope determination. Plaintiffs-Appellants Ad Hoc Shrimp Trade Action Committee, Versaggi Shrimp Corporation, and Indian Ridge Shrimp Co. (collectively plaintiffs or "AHSTAC") appeal a final order and decision of the

Court of International Trade, Ad Hoc Shrimp Trade Action Comm. v. United States, 473 F. Supp. 2d 1336 (Ct. Int'l Trade 2007) ("AHSTAC"), which sua sponte dismissed plaintiffs' challenge to the Department of Commerce ("Commerce") determination to exclude "dusted shrimp" from the scope of its antidumping investigation of various frozen and canned shrimp products. The trial court concluded that dismissal was warranted because it had no power to order the relief requested.  Commerce, although a defendant in this action, joins plaintiffs in arguing that the trial court erred in dismissing the action and has taken the unusual position of asking this court to grant the relief requested by plaintiffs—a remand to the trial court to determine on the merits whether Commerce erred in excluding dusted shrimp from its final determination.  We agree with plaintiffs and Commerce.  While we affirm the trial court's holding that it was without power to order Commerce to amend the antidumping order itself, we reverse its holding that it did not have power to review Commerce's final scope determination.

I.
A.

Importers of goods into the United States are subject to antidumping duties if (1) Commerce determines that "a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value;" and (2) the International Trade Commission ("ITC") determines that a domestic industry will be harmed "by reason of imports of that merchandise, or by reason of sales (or the likelihood of sales) of that merchandise for importation." 19 U.S.C. § 1673 (emphasis added); see also Viraj Group v. United States, 476 F.3d 1349, 1351 (Fed. Cir. 2007).

Under the statute, a multi-step process involving actions by both Commerce and the ITC must be completed before an antidumping order can issue.  In most cases the

process begins when an interested party files a petition with Commerce and the ITC requesting the imposition of antidumping duties for a certain class of merchandise. 19 U.S.C. § 1673a. Commerce will then initiate an "antidumping duty investigation." Id. Within 45 days (barring exceptional circumstances) of Commerce's initiation of the investigation, the ITC is required to issue a preliminary determination of whether there is a "reasonable indication" that an industry in the United States is materially injured or threatened with injury by reason of imports of the "subject merchandise."[1]   Id. § 1673b(a).   If the ITC makes a negative determination (i.e., finds no injury), the investigation is terminated. Id.

If the ITC makes an affirmative determination, then Commerce must issue a preliminary determination of whether there is "a reasonable basis to believe or suspect that the merchandise is being sold, or is likely to be sold, at less than fair value." Id. § 1673b(b). As part of this preliminary determination, Commerce will also make a preliminary determination of the scope of the investigation. Within 75 days after its preliminary determination, Commerce must issue a "final determination of whether the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value."   Id. § 1673d(a)(1). If Commerce determines that goods within the proper scope of the investigation are being or are likely to be sold at less than fair value, Commerce forwards its determination and "all information upon which such determination was based" to the ITC. Id. § 1673d(c).  The ITC must then make a final determination of whether United States industry is materially threatened or injured by the importation of "the merchandise with respect to which [Commerce] has made an

---

[1]     "Subject merchandise" is defined in the statute as "the class or kind of merchandise that is within the scope of an investigation . . . ." Id. § 1677(25).

affirmative determination." Id. § 1673d(b). If Commerce and the ITC both issue final affirmative determinations, then Commerce "shall issue" an antidumping order. Id. §§ 1673d(c)(3), 1673e(a). If either of the final determinations is negative, the investigation is terminated. Id. § 1673d(c).

Judicial review of the antidumping procedure is available in the Court of International Trade. In particular, the statute provides that within 30 days of publication in the Federal Register, an interested party can commence an action in the Court of International Trade for a review of "[a] final negative determination by [Commerce] or the [ITC] under section 705 or 735 of this Act [19 U.S.C. § 1671d or 1673d], including, at the option of the appellant, any part of a final affirmative determination which specifically excludes any company or product." Id. §§ 1516a(a)(2)(B)(ii), 1516a(a)(2)(A)(i)(I) (emphasis added).

B.

The antidumping proceedings at issue in this case proceeded as required by statute. On December 31, 2003, AHSTAC, a coalition of members of the domestic shrimp industry, filed an antidumping duty petition concerning frozen and canned warmwater shrimp from Brazil, Ecuador, India, Thailand, China, and Vietnam. In response, Commerce announced that it was initiating an antidumping investigation. Notice of Initiation of Antidumping Duty Investigations: Certain Frozen and Canned Warmwater Shrimp from Brazil, Ecuador, India, Thailand, the People's Republic of China and the Socialist Republic of Vietnam, 69 Fed. Reg. 3876 (Jan. 27, 2004) ("Initiation Notice"). In the Initiation Notice, Commerce announced that it was preliminarily defining the scope of the investigation to include "products which are

processed from warmwater shrimp and prawns through either freezing or canning and which are sold in any count size," but was excluding certain categories of shrimp including breaded shrimp and prawns, fresh shrimp, and dried shrimp. Id. at 3877. Commerce set aside a period of time, however, for parties to "raise issues regarding product coverage" prior to the issuance of the preliminary determinations. Id.

In February 2004 the ITC issued its preliminary determination that there was a reasonable indication that United States industry was materially injured by reason of imports of certain frozen or canned warmwater shrimp and prawns from the countries named in the petition. Certain Frozen or Canned Warmwater Shrimp and Prawns from Brazil, China, Ecuador, India, Thailand, and Vietnam, USITC Pub. 3673 (Feb. 2004).

Meanwhile, in response to Commerce's initial request for comments regarding product coverage, various foreign producers, including Defendant Eastern Fish Company, Inc. ("Eastern Fish"), submitted briefs to Commerce arguing that "battered shrimp" and "dusted shrimp" should be excluded from the scope of the investigation. According to Eastern Fish and the other foreign producers, "dusted shrimp," i.e., shrimp coated with a light layer of flour, is only used as an intermediate to making the already excluded breaded shrimp and, therefore, should similarly be excluded.

After considering the interested parties' comments, Commerce issued its preliminary determinations finding that certain frozen and canned warmwater shrimp from the countries under investigation were being sold in the United States at less than fair value. Notice of Preliminary Determination of Sales at Less than Fair Value, Partial Affirmative Preliminary Determination of Critical Circumstances and Postponement of Final Determination, 69 Fed. Reg. 42654 (July 16, 2004) ("Commerce Preliminary

Determination").[2] In its preliminary determinations, Commerce excluded "battered shrimp" from the scope of the investigation under the exclusion for "breaded shrimp" but did not exclude "dusted shrimp." U.S. Dep't of Commerce Memorandum, Antidumping Investigation on Certain Frozen and Canned Warmwarter Shrimp from Brazil, Ecuador, India, Thailand, the People's Republic of China and the Socialist Republic of Vietnam: Scope Clarification: Dusted Shrimp and Battered Shrimp 18 (July 2, 2004) ("July Scope Memorandum"). Commerce found, however, that there was "sufficient evidence for the Department to be prepared to exclude [dusted shrimp] from the scope of the order provided an appropriate description [could] be developed." Commerce Preliminary Determination, 69 Fed. Reg. at 42660; see also July Scope Memorandum at 18. In response, certain importers proposed a definition of "dusted shrimp" based on various physical requirements, and Commerce determined that this definition provided a workable definition that would not lead to circumvention of the antidumping order. U.S. Dep't of Commerce Memorandum, Antidumping Investigation on Certain Frozen and Canned Warmwarter Shrimp from Brazil, Ecuador, India, Thailand, the People's Republic of China and the Socialist Republic of Vietnam: Scope Clarification: Dusted Shrimp and Battered Shrimp (Nov. 29, 2004) ("November Scope Memorandum"). Accordingly, dusted shrimp were excluded from the scope of Commerce's final determinations,[3] which affirmed the finding of sales at less than fair value for those

---

[2] A separate investigation was initiated for each of the six countries, and there were separate preliminary and final determinations for each country; however, the issue of scope was consolidated for all of the investigations. Thus for the purposes of this appeal, all six investigations can be treated identically. For ease, we cite only to the orders regarding the China investigation. As relevant here, substantively identical determinations were made for the other five countries.

[3] In its final determination, Commerce defined "dusted shrimp" as

goods within the scope of the investigation.  Notice of Final Determination of Sales at Less than Fair Value: Certain Frozen and Canned Warmwater Shrimp from the People's Republic of China, 69 Fed. Reg. 70997, 71001 (Dec. 8, 2004) ("Commerce Final Determination").

Commerce then forwarded the results of its final fair value determination to the ITC. The ITC determined that United States industry was materially injured "by reason of imports from Brazil, China, Ecuador, India, Thailand, and Vietnam of certain non-canned warmwater shrimp and prawns . . . that have been found by the Department of Commerce to be sold in the United States at less than fair value (LTFV)."[4] Certain Frozen or Canned Warmwater Shrimp and Prawns from Brazil, China, Ecuador, India, Thailand, and Vietnam, USITC Pub. 3748, at i (Jan. 2005) ("ITC Final Determination") (emphasis added). The report noted that Commerce had excluded "dusted shrimp" from its scope of the investigation and that the ITC "must accept the determination of the

---

a shrimp-based product that (1) Is produced from fresh (or thawed-from-frozen) and peeled shrimp; (2) To which a "dusting" layer of rice or wheat flour of at least 95 percent purity has been applied; (3) So that the entire surface of the shrimp flesh is thoroughly and evenly coated with flour; and (4) The non-shrimp content of the end product constitutes between 4 to 10 percent of the product's total weight after being dusted, but prior to being frozen; and (5) Is subjected to IQF freezing immediately after application of the dusting layer.

Commerce Final Determination, 69 Fed. Reg. at 71001.

[4] The ITC found that industry in the United States was not materially injured by sale of canned shrimp and prawns. ITC Final Determination at i. Accordingly, canned shrimp were excluded from the scope of the final antidumping order. Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from the People's Republic of China, 70 Fed. Reg. 5149, 5152 (Feb. 1, 2005).

Department of Commerce as to the scope of the imported merchandise sold at less than fair value." Id. at 4. **[JA 249]**

Following the ITC's final material injury determination, Commerce published amended final determinations to correct various ministerial errors in its initial final fair value determinations, and as required by statute, issued the antidumping duty orders. Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from the People's Republic of China, 70 Fed. Reg. 5149 (Feb. 1, 2005). "Dusted shrimp" were excluded from the scope of the orders. Id.

C.

On April 1, 2005, AHSTAC filed a timely complaint in the Court of International Trade appealing "the final determination issued by the United States Department of Commerce" to the extent that it excluded "dusted shrimp" from the scope of the antidumping investigation. Compl. ¶¶ 1-2, 21. In their prayer for relief plaintiffs requested that the Court of International Trade "[d]irect Commerce to rescind its determination to exclude 'dusted' shrimp from the scope of the investigation, and to amend its order to include 'dusted' shrimp among products subject to the antidumping duty order." Id. ¶ 21.

Plaintiffs filed a Rule 56.2 motion for judgment on the agency record, see Ammex Inc. v. United States, 419 F.3d 1342, 1344 (Fed. Cir. 2005); cf. Bannum v. United States, 404 F.3d 1346, 1353-57 (Fed. Cir. 2005), arguing that Commerce's final determinations "unlawfully excluded so-called 'dusted shrimp' from the scope of the investigations" and thereby requested that the trial court "[r]emand the final

determinations to the U.S. Department of Commerce with instructions to correct this error . . . ." Mot. for J. on the Agency R. 2 (Sept. 8, 2005). The trial court, sua sponte, dismissed the case over the objections of both plaintiffs and Commerce. AHSTAC, 473 F. Supp. 2d at 1337. Although the trial court recognized that it had subject matter jurisdiction to review Commerce's final determination, it held that dismissal was proper because the Court of International Trade did not have the authority to grant the relief requested by plaintiffs. Id. at 1343-48.

AHSTAC appealed. We have jurisdiction to review the final judgment of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5).

II.

This Court reviews the Court of International Trade's legal determinations without deference. United States v. Ford Motor Co., 463 F.3d 1286, 1290 (Fed. Cir. 2006); Ammex, 419 F.3d at 1344.

The parties dispute how to characterize the trial court's holding. Plaintiffs and Commerce suggest that the court dismissed the case for lack of jurisdiction. Eastern Fish argues that the court found that it did have jurisdiction, but did not have authority to grant the relief requested. Eastern Fish more accurately describes the trial court's holding. See AHSTAC, 473 F. Supp. 2d at 1343 (holding in a section entitled "subject matter jurisdiction" that "[t]he court will consider the amended final determinations of Commerce to be properly before the court for judicial review" before turning to the merits of the Rule 56.2 motion and concluding that the relief plaintiffs requested was unavailable). But plaintiffs' and Commerce's characterization of that ruling as jurisdictional is understandable. Our case law is arguably inconsistent about whether a

finding that a court does not have authority to grant the relief requested should be considered jurisdictional. Compare Rhone Poulenc Inc. v United States, 880 F.2d 401 (Fed. Cir. 1989) (holding that whether the Court of International Trade has power or authority to grant the equitable relief requested was not a question of jurisdiction), and Nat'l Ctr. for Mfg. Sci. v. United States, 114 F.3d 196, 202 (Fed. Cir. 1997) ("We do not, however, mean to suggest any view as to the merits of the case or any other issue going to the jurisdiction of the district court or its authority to grant the requested relief." (emphasis added)), with Elec. Data Sys. Fed. Corp. v. Gen. Servs. Admin. Bd. of Contract Appeals, 792 F.2d 1569, 1580 n.8 (Fed. Cir. 2006) ("[A] claim seeking relief only beyond that which may be granted will negate jurisdiction."), and Ledford v. United States, 297 F.3d 1378, 1381 (Fed. Cir. 2002) (explaining in a Court of Federal Claims case that, "[i]n order to establish jurisdiction over these claims, [the plaintiff] must point to some statute specifically conferring power upon the trial court to grant his desired relief"). As nothing in the instant appeal turns on whether the trial court's dismissal was truly jurisdictional, we need not, and do not, decide whether the trial court's determination that the case should be dismissed for lack of authority to grant the relief requested was also implicitly a holding that the court lacked subject matter jurisdiction over the suit. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998) (cautioning against "drive-by jurisdictional rulings").

The trial court's dismissal rested on three independent holdings. First, the trial court held that it did not have authority to order Commerce to unilaterally amend the antidumping order because Commerce was without statutory power to amend an antidumping order to include merchandise which was not the subject of an affirmative

final material injury determination by the ITC. Second, the trial court found that plaintiffs had not requested as relief that the court remand Commerce's final fair value determination to the agency, except to the extent that this was part of an order to amend the antidumping order. Third, the trial court held that even if plaintiffs had requested a remand of Commerce's final determination, the court was without power to grant such relief because "plaintiffs, although having brought a timely challenge to the amended final less than fair value determinations of Commerce, failed to challenge the final affirmative injury determination of the U.S. International Trade Commission on which the antidumping duty orders on frozen shrimp were based . . . ." AHSTAC, 473 F. Supp. 2d. at 1337. According to the trial court, this failure to appeal the ITC's final determination would make a court order directing Commerce to amend its final determinations to include dusted shrimp "futile should the Commission refuse to act voluntarily to modify its final injury determination." Id. at 1347-48. We review each determination in turn.

A.

The trial court did not err in concluding that it was without authority to order Commerce to directly revise the antidumping order to include dusted shrimp. The Court of International Trade has no authority to order Commerce to act in direct violation of the statute. Under the statute, Commerce can only issue an antidumping order if it has "determine[ed] that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value," and (2) the ITC determines that an industry in the United States is materially injured or threatened with material injury by "reason of imports of that merchandise" or by reasons of sales of "that merchandise." 9

U.S.C. § 1673 (emphasis added). Accordingly, the Court of International Trade has no authority to order Commerce to issue an antidumping order on merchandise for which the ITC has never made a material injury finding. See Wheatland Tube Co. v. United States, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (explaining that "allow[ing] Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation" would "frustrate the purpose of the antidumping laws").

On appeal, AHSTAC concedes that the Court of International Trade could not order Commerce to amend the antidumping order in the absence of a final material injury determination by the ITC that included dusted shrimp.[5] It argues, however, that the ITC's final determination did, in fact, include dusted shrimp. In reaching this conclusion, AHSTAC relies on a footnote in the ITC's final material injury determination which stated that "to the extent official statistics contain any imports of 'dusted' or 'battered' shrimp (which Commerce excluded from the scope of investigations in its final determinations) imports may be slightly overstated." See ITC Final Determination at I-2 n.3.

We agree with the trial court that the fact that the ITC may have relied, at least in part, on data which included dusted shrimp is not sufficient to establish that the ITC made a final determination of material injury which included dusted shrimp. Under the statute, the ITC has the authority to make a final determination of material injury only for "the merchandise with respect to which [Commerce] has made an affirmative determination." 19 U.S.C. § 1673d(b). In this case, that merchandise excluded dusted

---

[5] AHSTAC also does not challenge the trial court's ruling that the court lacked authority to order the ITC to change its final determination since the ITC was never brought into the jurisdiction of the court.

shrimp. Moreover, the ITC explicitly recognized that Commerce had excluded dusted shrimp from the scope of the investigation and that the ITC "must accept the determination of the Department of Commerce as to the scope of the imported merchandise sold at less than fair value." ITC Final Determination at 4. In keeping with its statutory duties, the ITC's final determination was limited to finding material injury "by reason of imports . . . that have been found by the Department of Commerce to be sold in the United States at less than fair value (LTFV)." Id. Accordingly, whether or not the ITC could have found material injury if dusted shrimp were included in the scope of the investigation, the ITC never made such a finding and would have been statutorily precluded from doing so.

Thus, the trial court correctly determined that it was without authority to order Commerce to amend the antidumping order immediately.

B.

The trial court concluded that given its lack of authority to order Commerce to amend the antidumping order itself, the present suit should be dismissed because plaintiffs had never requested any other relief. AHSTAC, 473 F. Supp. 2d at 1345-46. The court found that prior to oral argument plaintiffs had never sought a remand of Commerce's final determination to the agency unless there was also a concurrent order directing that the antidumping order be amended. Id. at 1346-47. The trial court's narrow reading of plaintiffs' requested relief, however, does not fairly reflect the record.

In its complaint, AHSTAC requested a declaratory judgment that "Commerce's Final Determination to exclude 'dusted' shrimp from the scope of the investigation is unsupported by substantial evidence, and is otherwise not in accordance with the law"

and a court order directing Commerce "to rescind its <u>determination</u> to exclude 'dusted' shrimp from the scope of the investigation, <u>and</u> to amend its order to include 'dusted' shrimp among products subject to the antidumping duty order." Compl. ¶ 21 (emphasis added). AHSTAC's Rule 56.2 motion similarly concludes: "[T]he U.S. Department of Commerce's <u>final determinations</u> unlawfully excluded so-called 'dusted shrimp' from the scope of the investigations. Accordingly, plaintiffs respectfully request that this Court <u>remand the final determinations</u> to the United States Department of Commerce <u>with instructions to correct this error</u> as specified in the accompanying proposed order." Mot. for J. on the Agency R. 2 (emphasis added).

Thus, plaintiffs consistently requested that the trial court find that Commerce's final determinations excluding dusted shrimp from the scope of the investigation were not supported by substantial evidence and thereby direct Commerce to rescind these determinations. Nowhere do plaintiffs condition their request for an order remanding Commerce's final determination on the court also ordering Commerce to amend the antidumping order. Accordingly, the trial court erred in concluding that the only relief requested by plaintiffs was a court order directing the amendment of the antidumping order.[6]

C.

Since we disagree with the trial court and find that AHSTAC did request that Commerce's final determination be remanded to the agency, we must also consider the

---

[6] Although Commerce does not explicitly address the issue, in arguing to this court that the case should be remanded to the Court of International Trade to review Commerce's final determination on the merits and arguing that the proper remedy if plaintiffs prevail would be a new final determination by Commerce that is amended to include dusted shrimp within its scope, the agency appears to concede that plaintiffs had sufficiently requested such relief.

trial court's alternative holding that, had such relief been requested, it would not have been empowered to grant it. AHSTAC, 473 F. Supp. 2d at 1347-48. Notwithstanding that the position is adverse to its interests in the instant suit, Commerce has joined AHSTAC in vigorously arguing that the trial court was wrong to hold that it lacked the authority to remand Commerce's final determination to the agency to correct any unlawful limitations on the scope of the antidumping investigation.[7] We agree.

The antidumping statute provides an interested party a right to Court of International Trade review of "[a] final negative determination by [Commerce] or the [ITC] . . . including, at the option of the appellant, any part of a final affirmative determination which specifically excludes any company or product." 19 U.S.C. § 1516a(a)(2)(B)(ii). Thus, the antidumping statute explicitly authorizes suits in the Court of International Trade, such as the one brought here, to review the scope of a final affirmative determination by Commerce. And there is nothing in the statute that requires an interested party to bring a suit simultaneously against both Commerce and the ITC. To the contrary, the statute is clearly phrased in the alternative, allowing for a suit against either Commerce or the ITC.

Despite the clear statutory text, the trial court held that it had no authority to remand the final determination to Commerce because doing so "might well prove to be a useless exercise" if the ITC refused to act voluntarily to modify its final injury

---

[7] At oral argument, Commerce explained its unusual posture: "The court possessed authority to address the final determination. . . . We continue to maintain the same position that we maintained below. Although it is certainly not helpful to our current case, we are fully prepared to go back to the trial court and adjudicate the merits of the scope determination . . . . The statute says what it says and we certainly believe that antidumping law should be administered in accordance with the statute." Or. Ar. at 14:29-16:00, available at http://www.cafc.uscourts.gov/oralarguments.

determination, thus, preventing the amendment of the antidumping order. AHSTAC, 473 F. Supp. 2d at 1348. Neither the statute, our case law, nor general principles of agency adjudication provide any support for such a novel legal theory. A federal court cannot avoid ruling on the legality of a government action when review of the action is otherwise properly before the court simply because there is no guarantee that fixing the error will change the ultimate result. Cf. Stanton v. Stanton, 421 U.S. 7, 18 (1975) ("The appellant, although prevailing here . . . may or may not ultimately win her lawsuit."). Indeed, we have explained that the Court of International Trade is precluded by statute from ever outright reversing a decision by Commerce or the ITC when reviewing countervailing duty and antidumping duty proceedings. Rather, at most it can simply remand for further consideration consistent with its decision. Altx Inc. v. United States, 370 F.3d 1108, 1111 n.2 (Fed. Cir. 2004) ("Section 1516a limits the Court of International Trade to affirmances and remand orders; an outright reversal without a remand does not appear to be contemplated by the statute . . . ."); Nippon Steel Corp v. Int'l Trade Comm'n, 345 F.3d 1379, 1381 (Fed. Cir. 2003) (holding that the Court of International Trade abused its discretion in reversing a finding of the ITC and directing a finding of no material injury and instead was required to "return[] the case to the Commission for further consideration"); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered

to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."). Thus, there is nearly always the possibility that the same result will be reached but on different grounds. The situation is no different here. The statute provides AHSTAC with a right to appeal not only a final antidumping order, but also the exclusion of certain products from Commerce's final determination. If the exclusion of dusted shrimp was not supported by substantial evidence or was otherwise legally erroneous, AHSTAC has a right to have the final determination remanded to the agency to correct the error, irrespective of the fact that ITC action will also be necessary before the antidumping order itself can be amended. To hold otherwise would nullify the clear statutory command that Commerce's final scope determinations are independently reviewable in federal court.[8]

---

[8] The situation might be different if any error by Commerce was harmless because correcting it could not possibly result in a different outcome. See Intercargo Ins. Co. v. United States, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings."). But as AHSTAC and Commerce point out, if the trial court remanded Commerce's final determination to the agency, the ITC would have an opportunity to amend its final material injury determination to be consistent with the scope of Commerce's amended determination. Section 1673d details the procedures by which Commerce's final fair value determination is referred to the ITC for issuance of a final material injury determination. While the statute does not explicitly refer to amended final determinations, Commerce argues convincingly that the statutorily mandated procedures apply to an amended fair value determination that changes the scope of the investigation, and accordingly, that if Commerce amended its final determination to include dusted shrimp, the ITC would reconsider its final material injury determination as part of its routine obligation under Section 1673d. Furthermore, the ITC also has the inherent authority to reconsider its determinations. See Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 455 (1999) (reiterating "the traditional rule of administrative law" that whether an agency decides to reopen a closed case is "generally 'committed to agency discretion by law'"); Magnola Metallurgy, Inc. v. United States, 508 F.3d 1349, 1357 (Fed. Cir. 2007) (same); Elkem Metals Co. v. United States, 193 F. Supp. 2d 1314, 1320 (Ct. Int'l Trade 2002) (holding that the ITC had "inherent authority" to reconsider its final determinations).

Moreover, while the trial court faults plaintiffs for failing to bring a suit against the ITC, doing so in the circumstances of this case is not only unnecessary, but also probably improper. The statute makes clear that the ITC has no independent authority to expand the scope of an antidumping investigation.[9] Accordingly, plaintiffs could not have had any valid claim against the ITC for failing to include dusted shrimp within the scope of the investigation, nor could they have alleged any actual or imminent injury caused by the ITC. As Commerce argues, any such suit would likely be an "unripe 'placeholder' lawsuit," lacking an Article III case or controversy. U.S. Br. 11; see Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1337 (Fed. Cir. 2007) (explaining that a justiciable Article III controversy requires "'[a] plaintiff [to] allege personal injury fairly traceable to the defendant's allegedly unlawful conduct'" that is "'actual or imminent.'" (quoting Allen v. Wright, 468 U.S. 737, 751 (1984), and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992))).[10]

---

[9] Eastern Fish attempts to get around this problem by arguing that AHSTAC could have challenged the ITC's determination not to include dusted shrimp in its "domestic like products" determination. But this argument misses the fundamental distinction between the two inquiries. In order to determine whether a United States industry is materially injured by reasons of imports of the subject merchandise, the ITC is required to determine the relevant domestic industry which is defined by statute as "producers . . . of a domestic like product." 19 U.S.C. § 1677(4)(A). Domestic like product is in turn defined as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation." Id. § 1677(10). Thus, AHSTAC could have argued to the ITC that dusted shrimp was a "domestic like product" to the shrimp products Commerce in fact included within the scope of the investigation, which specifically excluded dusted shrimp. But that is an entirely different question from whether domestic industry would be injured (or what the scope of domestic like products should be) if dusted shrimp was included in the scope of the investigation.

[10] The trial court's reliance on Borlem SA-Empreedimentos Industriais v. United States, 913 F.2d 933 (Fed. Cir. 1990), is misplaced. In Borlem, after the issuance of an antidumping order, foreign company plaintiffs filed separate suits in the

Accordingly, AHSTAC's suit was properly filed, and the trial court erred in determining that it had no authority to review Commerce's final determination to exclude dusted shrimp for the scope of the antidumping investigation.

III.

We affirm the trial court's decision to the extent that it held that the court had no authority to order Commerce to amend the antidumping order. The trial court erred in dismissing the case, however, because the court does have the authority to remand Commerce's final less than fair value determination to the agency. On remand, the trial court should address the merits of AHSTAC's claim that "dusted shrimp" should be excluded from the scope of Commerce's final determination.

For the foregoing reasons the decision is

<u>AFFIRMED-IN-PART</u>, <u>VACATED-IN-PART</u>, and <u>REMANDED</u>.

COSTS

Each party shall bear its own costs.

---

Court of International Trade against Commerce, challenging Commerce's affirmative less than fair value determination, and against the ITC, challenging the ITC's affirmative material injury determination. <u>Id.</u> at 935. The fact that the plaintiffs in <u>Borlem</u> filed suit against both agencies when both agencies had issued final determinations adverse to their interests, provides no support for holding that the plaintiffs here had to file a suit against the ITC when they had no legal basis to challenge the ITC's holding and the ITC had issued a ruling that was not adverse to their interests.