# United States Court of Appeals for the Federal Circuit

---

**GLYCINE & MORE, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant*

**GEO SPECIALTY CHEMICALS, INC.,**
*Defendant-Appellant*

---

2017-1312

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00167-TCS, Chief Judge Timothy C. Stanceu.

---

Decided: January 23, 2018

---

RONALD MARK WISLA, Kutak Rock LLP, Washington, DC, argued for plaintiff-appellee. Also represented by LIZBETH ROBIN LEVINSON.

DAVID M. SCHWARTZ, Thompson Hine LLP, Washington, DC, argued for defendant-appellant.

---

Before MOORE, PLAGER, and CHEN, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This case turns on an important principle in administrative law, involving a basic tenet of the Administrative Procedure Act (hereafter "APA"), to which the defendant agency, the Department of Commerce, is subject. *See generally* 5 U.S.C. §§ 551 *et seq.* The question presented is—can an agency regulation, previously adopted by formal notice-and-comment rulemaking procedure pursuant to the APA, be amended by a guidance document that is not so enacted? The case comes to us on appeal from a decision of the United States Court of International Trade ("CIT").

Defendant-appellant GEO Specialty Chemicals, Inc. ("GEO") appeals the CIT's judgment. That judgment affirmed a decision by the United States Department of Commerce ("Commerce").[1] Commerce's decision, on remand from an earlier CIT order, extended the deadline for plaintiff-appellee Glycine & More, Inc. ("Glycine & More") to withdraw a request for an administrative review of an antidumping order, accepted the withdrawal, and rescinded the review.

Commerce made its decision under protest. The CIT in a prior order had invalidated Commerce's change of methodology for evaluating such time-extending petitions, announced in a "Notice," and ordered Commerce to re-evaluate its original denial of the withdrawal request pursuant to the court's understanding of the governing regulation, 19 C.F.R. § 351.213(d)(1).

Identifying more fully the parties to this litigation may be helpful since their roles evolve as the case devel-

---

[1]    When the context requires, the term "Commerce" refers as well to the Secretary of that department or the Secretary's designee.

ops. The proceedings before Commerce at issue were requested by two parties. One of those two parties was Baoding Mantong Fine Chemistry Co., Ltd. ("Baoding Mantong"), a Chinese producer and exporter of glycine. The other party was GEO Specialty Chemicals, Inc. ("GEO"), the defendant-appellant, a U.S. producer of glycine. A third party, plaintiff-appellee Glycine & More, filed a notice of appearance in the proceedings and participated in the review. Glycine & More is a U.S. importer of glycine manufactured by Baoding Mantong and an affiliate of Baoding Mantong.

Though the United States is listed as a party defendant, and despite the fact that what is at issue is the Commerce Department's understanding of its own regulations, neither Commerce nor the United States government have participated in the appeal.

On appeal, GEO argues that the first CIT decision in the case forced Commerce to adopt an erroneous interpretation of its regulation and thus forced Commerce in its later decision to reach an erroneous result. Glycine & More argues to uphold the decisions of the CIT. For the reasons we shall explain, we agree with the CIT's action and affirm its judgment.

BACKGROUND

*Administrative Reviews Initiated by Request*

Under the law, Commerce may determine whether foreign merchandise is being sold or is likely to be sold in the United States at less than its fair value. *See* 19 U.S.C. §§ 1673, 1677. The International Trade Commission ("ITC") separately determines whether an industry in the United States is materially injured or threatened with material injury by the import, sales, or likelihood of sales of that foreign merchandise. *Id.* When the ITC has so determined, Commerce then issues what is called an

antidumping order, and imposes a special duty on the import of such products. *See id.*

If Commerce thereafter receives a request for an administrative review of a previously issued antidumping duty order, Commerce must conduct such a review at least once during each 12-month period beginning on the anniversary date of the publication of the antidumping duty order. *See* 19 U.S.C. § 1675(a)(1). Although Congress in the governing legislation required that Commerce engage in such a review if properly requested, Congress did not provide for the situation at hand—how Commerce should proceed if a request, once made, is withdrawn.

To address this scenario, the Commerce Department proposed and adopted a regulation. In the adopted regulation, Commerce set forth rules for evaluating timely and untimely withdrawals:

> (d) Rescission of administrative review—(1) Withdrawal of request for review. The Secretary will rescind an administrative review under this section, in whole or in part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review. The Secretary may extend this time limit if the Secretary decides that it is reasonable to do so.

19 C.F.R. § 351.213(d)(1); *see also id.* § 351.102(b)(44) (defining "Secretary" as "the Secretary of Commerce or a designee").

In 2012 Baoding Mantong and GEO each requested review of an antidumping order that Commerce had imposed on imports of glycine from the People's Republic of China. Later, just at the end of the 90-day period after Commerce had published notice that it was initiating a review, GEO filed a notice of withdrawal of its petition for review. Shortly thereafter, Baoding Mantong filed its

notice of withdrawal of its request for review, accompanied by a request for extension of time to file its withdrawal; the notice of withdrawal was filed after the 90-day period provided in the regulation had expired.

Under the final sentence in the regulation, "[t]he Secretary may extend this time limit if the Secretary decides that it is reasonable to do so." 19 C.F.R. § 351.213(d)(1). In response to the Baoding Mantong notice and request, the Secretary declined to extend the 90-day time limit for a withdrawal, thus causing the notice of withdrawal to be ineffective.

That final sentence had remained unchanged since the publication of predecessor rules years earlier, and upon which the current rule, § 351.213(d)(1), was based. Further, as we shall explain, Commerce's understanding and application of that regulatory sentence remained essentially consistent over the years—until 2011.

In 2011, Commerce announced in a published guidance document a view of that sentence that dramatically changed its meaning.[2] The question raised in this appeal

---

[2] "Guidance" or "guidance document" is a frequently-used term to describe an agency's instructions published informally, that is without formal notice and comment rulemaking pursuant to 5 U.S.C. § 553(b)(A) of the APA. It encompasses what are termed general statements of policy and interpretive rules. The extent to which such guidance is or should be binding, and on which agency constituencies, is a matter of some difficulty—see, e.g., Administrative Conference of the United States ("ACUS"), Recommendation 2017-5, Agency Guidance Through Policy Statements, 82 Fed. Reg. 61,728, 61,734 (Dec. 29, 2017), addressed specifically to general policy statements; see the discussion at n.3, below, re-

is whether the Secretary's refusal, pursuant to the 2011 guidance document, to extend the time limit was legally proper. Was it made consistent with the requirements set forth in the governing regulation, specifically with the criterion in the final sentence of that regulation?

*History of 19 C.F.R. § 351.213(d)(1)*

The current regulation was published as a Final Rule in 1997. However, as proposed in 1996, the regulation did not allow for untimely withdrawals. Instead, the proposed regulation only allowed for *timely* withdrawals—and even that was discretionary:

> (d) Rescission of administrative review. (1) Withdrawal of request for review. The Secretary *may* rescind an administrative review under this section, in whole or in part, if a party that requested a review withdraws the request not later than 90 days after the date of publication of notice of initiation of the requested review.

Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7308, 7365 (emphasis added) (proposed Feb. 27, 1996).

The omission of any language allowing for untimely withdrawals in the proposed regulation was a puzzle. 19 C.F.R. Part 351 was, in part, a consolidation of existing regulations. *See id.* at 7308 (discussing consolidation in context of proposed rule). *See also* Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,296 (May 19, 1997) (discussing consolidation in context of final

---

garding interpretive rules. *See also* Nicholas R. Parrillo, *Federal Agency Guidance: An Institutional Perspective* (2017), a thorough and exhaustive study based on empirical data as well as legal analyses, commissioned by ACUS.

rule). Both of those then-existing regulations included identical language allowing for untimely withdrawals: "The Secretary may extend this [90-day] time limit if the Secretary decides that it is reasonable to do so." 19 C.F.R. §§ 353.22(a)(5), 355.22(a)(3) (1995).

The omission of this language in the newly proposed rule was even more puzzling in light of Commerce's statement, when proposing § 351.213, that "certain changes are worth noting," but no mention was made of this particular change. *See* Antidumping Duties; Countervailing Duties, 61 Fed. Reg. at 7317. Instead, Commerce merely stated that "Paragraph (d) deals with the rescission (previously referred to as 'termination') of administrative reviews, and clarifies that the Department may rescind a review that the Secretary self-initiated or in which there are no entries, exports, or sales to be reviewed." *Id.*

In adopting its Final Rule, however, Commerce returned the missing sentence. It explained that it added the language allowing untimely withdrawals in response to comments and in light of former §§ 353.22 and 355.22:

> Commenting on proposed § 351.213(d)(1) and its 90-day limit on withdrawals of a request for a review, one commenter suggested that the provision be modified so as to allow the Department to rescind an administrative review after the 90-day period has expired if (1) the party that initially requested the review withdraws its request, and (2) no other party objects to the rescission within a reasonable period of time. According to the commenter, such a rule would avoid the burden and expense of completing reviews that none of the parties want.
>
> We agree that the 90-day limitation may be too rigid. However, we believe that the Department must have the final say concerning rescissions of

reviews requested after 90 days in order to prevent abuse of the procedures for requesting and withdrawing a review. For example, we are concerned with the situation in which a party requests a review, the Department devotes considerable time and resources to the review, and then the party withdraws its requests once it ascertains that the results of the review are not likely to be in its favor. To discourage this behavior, the Department must have the ability to deny withdrawals of requests for review, even in situations where no party objects.

Therefore, in § 351.213(d)(1), we have retained the 90-day requirement. In addition we have added a new sentence, taken from 19 C.F.R. §§ 353.22(a)(5) and 355.22(a)(3), that essentially provides that if a request for rescission is made after the expiration of the 90-day deadline, the decision to rescind a review will be at the Secretary's discretion.

62 Fed. Reg. at 27,317.

A similar explanation for giving the Secretary the discretion to extend the 90-day deadline in appropriate cases was given when the sentence was added to the earlier antidumping regulation, again during the notice-and-comment process:

Department's Position [in response to comments]: . . . We recognize the importance to the party submitting the request for review of knowing the final results of the immediately preceding review, if any. Therefore, we are modifying paragraph (a) to permit the party that submits a request to withdraw the request under certain conditions. If a relevant review has not been completed before the end of the anniversary month during which the new request is submitted, the party that sub-

mitted the new request may withdraw it not later than 90 days after the date of publication of notice of initiation of the requested review. The Secretary may extend the time limit if it is reasonable to do so.

Antidumping Duties, 54 Fed. Reg. 12,742, 12,755 (Mar. 28, 1989). See also a similar explanation in the context of allowing untimely withdrawals in former 19 C.F.R. § 355.22(a)(3), Countervailing Duties, 53 Fed. Reg. 52,306, 52,328 (Dec. 27, 1988).

### Commerce's 2011 Notice

The history of § 351.213(d)(1) thus establishes Commerce's understanding of the circumstances under which it would be reasonable to extend a deadline for filing a withdrawal. The criteria for what would be a reasonable ground for extension reflects concerns for not wasting departmental resources, for giving parties an opportunity to know the results of prior administrative reviews when applicable, and for not conducting undesired reviews, among other considerations.

Despite this record, in August 2011 Commerce published what it denominated as a "Notice" in which it dramatically changed its approach to the extension provision in § 351.213(d)(1):

Pursuant to section 351.213(d)(1) of the Department's regulations, a party that has requested a review may withdraw that request within 90 days of the date of publication of the notice of initiation of the requested review. The regulation provides that the Department may extend this time if it is reasonable to do so. In order to provide parties additional certainty with respect to when the Department will exercise its discretion to extend this 90-day deadline, interested parties are advised that, with regard to reviews requested on the ba-

> sis of anniversary months on or after August 2011, the Department will not consider extending the 90-day deadline unless the requestor demonstrates that an extraordinary circumstance has prevented it from submitting a timely withdrawal request. Determinations by the Department to extend the 90-day deadline will be made on a case-by-case basis.
>
> The Department is providing this notice on its Web site, as well as in its "Opportunity to Request Administrative Review" notices, so that interested parties will be aware of the manner in which the Department intends to exercise its discretion in the future.

*See* Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 76 Fed. Reg. 45,773, 45,773 (Aug. 1, 2011) (the "2011 Notice").

Commerce did not make clear whether this "Notice" was intended as a statement of general policy or as an interpretive rule. *See* n.2, above. Though statements of general policy are understood to be non-binding, *id.*, there is some authority for the proposition that interpretive rules should be treated differently.[3]

Commerce did make clear that this change was to be global in nature, applicable to all future requests for an

---

[3] See Ronald M. Levin, *Rulemaking and the Guidance Exemption*, Admin. L. Rev. (forthcoming 2018), manuscript July 21, 2017, exhaustively reviewing the authorities and urging that interpretive rules be accorded no more weight than an agency's general policy statements. Available at papers.ssrn.com/sol3/papers.cfm?abstract_id=2958267.

extension of time to withdraw a previously-filed request for review. Thereafter, parties seeking untimely withdrawals would no longer be able to get an extension based on what might be reasonable under the circumstances in light of the concerns previously identified and employed by Commerce. Instead, they would have to demonstrate the existence of an "extraordinary circumstance" warranting an extension. Commerce applied this change in its approach to the administrative review in this case, which forms the basis for this appeal.

## *This Appeal*

This appeal stems from Commerce's 1995 antidumping duty order on glycine from the People's Republic of China, *see* Antidumping Duty Order: Glycine from the People's Republic of China, 60 Fed. Reg. 16,116 (Mar. 29, 1995), under which Commerce had imposed specified duties on imports of Chinese glycine. On March 1, 2012, Commerce notified interested parties of the opportunity to request an administrative review of that order for the period from March 1, 2011 through February 29, 2012. *See* Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 77 Fed. Reg. 12,559 (Mar. 1, 2012).

In announcing the opportunity to request review, Commerce repeated the language of its 2011 Notice, explaining that, if a party requested review, Commerce did not intend to extend the 90-day period for withdrawal unless the requestor demonstrated an extraordinary circumstance that prevented it from submitting a timely withdrawal request.

On March 30, 2012, GEO and Baoding Mantong separately requested an administrative review. On April 30, 2012, Commerce published notice that it had initiated an administrative review, and in that notice, Commerce again stated it did not intend to extend the 90-day period

for withdrawal absent a party demonstrating an extraordinary circumstance. *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 77 Fed. Reg. 25,401 (Apr. 30, 2012). On July 10, 2012, Commerce selected Baoding Mantong as one of two mandatory respondents and issued a questionnaire to the company.

On July 30, 2012, GEO submitted what was determined to be its timely withdrawal.[4] On August 7, 2012—after the 90-day period had ended—Baoding Mantong asked Commerce for an extension of the 90-day period in which to file its withdrawal, and an extension of the deadline for its questionnaire response. Baoding Mantong claimed that extraordinary circumstances existed and asserted that it learned of GEO's withdrawal only after the 90-day period expired.

Baoding Mantong explained that it did not withdraw before learning of GEO's withdrawal because, if GEO had not withdrawn, then its withdrawal would have had no effect. Baoding Mantong further explained that good reason existed for permitting an extension of time, because Commerce would be able to preserve its resources since Baoding had not yet submitted its questionnaire.

On August 22, 2012, Commerce informed Baoding Mantong that Commerce was considering its request, and that it did not have to respond to Commerce's questionnaire. Subsequently, Commerce informed Baoding Mantong that it was rejecting its untimely withdrawal because Baoding Mantong had not demonstrated an extraordinary circumstance warranting an extension of

---

[4] The 90-day period ended on July 29, 2012, but because this was a Sunday, Commerce deemed GEO's withdrawal timely.

the 90-day period. Commerce also instructed Baoding Mantong to respond to Commerce's questionnaire. Baoding Mantong responded in a letter dated October 18, 2012 and filed on October 19, 2012, informing Commerce that it would not participate in the administrative review or respond to the questionnaire.[5]

On December 6, 2012, Commerce published its Preliminary Results and proposed assigning Baoding Mantong a 453.79% dumping duty margin based on facts otherwise available on the record and an adverse inference due to Baoding Mantong's refusal to respond to Commerce's questionnaire. *See* Glycine from the People's Republic of China: Preliminary Results, 77 Fed. Reg. 72,817 (Dec. 6, 2012).[6]

On December 17, 2012, Glycine & More entered an appearance before Commerce and objected to Commerce's rejection of Baoding Mantong's request to withdraw and the dumping duty margin.

On April 8, 2013, Commerce published its Final Results, assigning the same dumping margin to Baoding Mantong based on its Preliminary Results. In its related Issues and Decision Memorandum, Commerce rejected

---

[5] On October 18, 2012, Commerce published the final results of a *prior* (2010–2011) administrative review of the 1995 antidumping order and assigned Baoding Mantong a dumping margin of 453.79% for the period from March 1, 2010 through February 28, 2011. *See* Glycine from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 77 Fed. Reg. 64,100, 64,101 (Oct. 18, 2012).

[6] Commerce based the 453.79% rate on the prior (2010-2011) administrative review, *see* J.A. 351, however, the rate has since been modified.

the assertion that its interpretation and application of § 351.213(d)(1) had been inconsistent. Commerce noted that, "[i]n the past, extending the 90-day deadline depended on a variety of factors, such as whether the Department had devoted significant time or resources to the review and the stage of the review." J.A. 663. However, Commerce explained that it had "clarified" the deadline in its 2011 Notice to provide parties with "'additional certainty'" and "[t]o enhance certainty and fairness." *Id.*

Commerce rejected the argument that Baoding Mantong had demonstrated an extraordinary circumstance and observed that Baoding Mantong had likely stopped participating in the review after learning of the results of the prior (2010–2011) administrative review, which were published one day before Baoding Mantong's notice ending its participation was filed. Commerce further noted that the parties knew of the preliminary and revised preliminary results of the prior (2010–2011) administrative review before the 90-day period ended.

*Proceedings Before the CIT*

On April 26, 2013, Glycine & More filed a complaint with the CIT and eventually moved for judgment on the agency record, arguing, inter alia, that Commerce had violated its own regulation concerning the 90-day time limit. Commerce and GEO opposed Glycine & More's motion for judgment.

The CIT issued its opinion on November 3, 2015. In that opinion the CIT concluded that Commerce's interpretation of its own regulation was unreasonable and that Commerce's rejection of Baoding Mantong's untimely withdrawal was improper.

The CIT conducted a lengthy review of the relevant regulatory history and determined that Commerce's 2011 Notice, requiring an "extraordinary circumstance" in the context of untimely withdrawals, did not control because

it defeated the original purpose of the regulation. The CIT determined that Commerce's interpretation of § 351.213(d)(1) was unreasonable as applied.

The CIT observed that Baoding Mantong had not learned of the final results of the prior administrative review until after the 90-day deadline. The CIT also explained that, because Baoding Mantong had sought withdrawal before submitting its questionnaire response, there was no evidentiary basis from which Commerce could have concluded that it had spent considerable time and resources on the review. The CIT remanded for Commerce to re-decide whether Baoding Mantong's extension should be granted.

In its remand, the CIT required that Commerce "reach a new decision that does not apply the interpretation of [§ 351.213(d)(1)] adopted in 2011, which is unreasonable for the reasons the [CIT] has identified, and instead applies an interpretation that *is* reasonable and, in particular, is consistent with the purpose of the regulation, as stated by Commerce upon promulgation in 1989 and maintained upon re-promulgation in 1997." *Glycine & More, Inc. v. United States*, 107 F. Supp. 3d 1356, 1370 (Ct. Int'l Trade 2015).

The CIT instructed Commerce to consider the circumstances including that Baoding Mantong's request occurred only days after the 90-day deadline expired; that the review was in an early stage with no questionnaire response being submitted; that Baoding Mantong could not have known the final results of the prior review; and that all parties who had requested the review wanted it rescinded. The CIT stated that it "envisions that it could sustain a decision reinstating the previous, negative decision only if the record were to support a finding of a new and compelling circumstance, not previously identified by Commerce." *Id.*

The CIT further stated that it "appears likely" that only a decision allowing an extension of the 90-day period and rescinding the administrative review "could fulfill the stated purpose of § 351.213(d)(1). For although this regulation grants [Commerce] discretion over whether to extend the 90-day period, the compelling circumstances giving rise to this case, when viewed according to the purpose of the regulation, would call into question any decision on remand reinstating the previous, challenged decision to deny the extension." *Id.*

### Commerce's Decision on Remand

After remand, in February 2016, Commerce filed its Redetermination Pursuant to Court Remand Order ("Redetermination Decision"). In that Redetermination, Commerce stated its intent to extend—under protest—the deadline for Baoding Mantong to withdraw and rescind the review, because Commerce could not find any "new and compelling circumstance" justifying denial.

At the same time, Commerce made clear its grounds for protest: Commerce asserted that the CIT's decision unfairly and improperly 'nullified' Commerce's "wide discretion" under § 351.213(d)(1). Commerce explained that it did not read the regulatory histories of the final rules in 1989 and 1997 as limiting Commerce's discretion to account for instances in which parties were seeking to know the final results of an immediately preceding review. Commerce emphasized that, in its view, the purpose of the regulation was to grant Commerce maximum discretion in determining whether to extend the 90-day period.

### Further Proceedings Before the CIT

In October 2016, the CIT issued a judgment and opinion affirming Commerce's Redetermination Decision, granting Glycine & More's CIT Rule 56.2 motion for judgment on the agency record, and ordering that Com-

merce take the necessary steps to rescind the administrative review with respect to Baoding Mantong.

The CIT, however, emphasized that it was not affirming all of Commerce's statements in its decision, because Commerce had misinterpreted the CIT's prior decision. In particular, the CIT explained that it did not nullify Commerce's discretion, and that Commerce did not have to grant untimely requests merely because the requestor did not know the final results of an immediately preceding review. Instead, the CIT explained that, by way of example, Commerce might deny such a request if it had already expended considerable time and resources in the review at issue and the requestor sought withdrawal after concluding the results were not likely to be favorable— even if the requestor had not learned the results of the immediately preceding review.

### *Appeal to this Court*

GEO appeals and argues that the CIT failed to give proper deference to Commerce's interpretation of its own regulation in 19 C.F.R. § 351.213(d)(1). GEO also argues that the CIT improperly directed Commerce's findings on remand, while precluding Commerce from explaining or clarifying its own interpretation. As noted, neither Commerce nor the United States join the appeal.

We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

We review the CIT's grant of judgment upon the administrative record without deference, except that we review the CIT's factual determinations for clear error. *See Ammex, Inc. v. United States*, 419 F.3d 1342, 1344 (Fed. Cir. 2005). We review the CIT's legal determinations without deference. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1379 (Fed. Cir. 2008).

When construing an agency regulation as a matter of law, we use basically the same rules we would use in construing a statute. *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). We examine the regulation's language to ascertain its plain meaning. *Id.* We may also consider the language of related regulations. *Id.* When the regulation is unambiguous, "it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision." *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1347 (Fed. Cir. 2005) (quoting *Gibson v. United States*, 194 U.S. 182, 185 (1904)). If "the plain meaning of the regulation is clear, no further inquiry is required into agency interpretations or the regulatory history to determine its meaning." *Roberto*, 440 F.3d at 1350.

On the other hand, if the regulation is deemed to be ambiguous, then an agency's interpretation of its own regulation may be entitled to judicial deference, generally described as *Auer* or *Skidmore* deference, referring to the decisions that articulated the particular type of interpretive deference owed an agency by the courts. In this case, GEO argues that the CIT, by failing to give the agency's understanding of its own regulation proper deference, erred in its first decision, an error that necessarily infected its second decision.

Before addressing the question of how wide is the agency's discretion in interpreting its own regulations, discussed at length by the appellant; and before addressing the consequent question of how much and what kind of deference is owed the agency, a question which further implicates the history of the sentence in § 351.213(d)(1), discussed at length by the CIT in its opinions—there is a predicate question: is this 2011 Notice ambiguous?

The answer is no. As we have discussed, there is no question about what Commerce intended by its 2011

Notice—the explanation given in the Notice leaves little room for doubt—and its application to this appellant indicates a straightforward understanding and decision-process. And as the record establishes, this understanding changes significantly what the original enactment of the sentence was intended to do, and how it was applied, as demonstrated by the history of the sentence itself.

In short, the meaning of the 2011 Notice is plain, and the difference between what the sentence at issue meant before and after the Notice is equally plain. Before the Notice, the regulation was understood to provide the Secretary with wide discretion, to use judgment regarding the facts and circumstances presented, and to apply a reasonableness test in making the decision whether to extend the deadline for filing a withdrawal notice. After the 2011 Notice, only "extraordinary circumstances" would do, and the Secretary's discretion was to be applied narrowly to the case, and only when an applicant for extension could prove such extraordinary circumstances exist. Thus, the Notice represented an incompatible departure from the clear meaning of the regulation. It was not simply an interpretive statement regarding an ambiguity in the regulation or a general statement of policy.

Assuming Commerce wished to rewrite the regulation in this manner, could it do so in this way? The answer is no. Because the regulation's meaning is clear, no deference is warranted. Deferring to Commerce's position "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) (unambiguous regulation could not be rewritten by agency under guise of interpreting regulation and judiciary owed no deference to agency interpretation). If Commerce wished to rewrite or amend the regulation, such a regulation intended to have the force of law must be adopted

with notice-and-comment rulemaking, which was absent here. *See id*. at 587–88.

Since the 2011 Notice was intended to effectively re-write the substantive meaning of the regulation without going through the necessary notice-and-comment rule-making, it has no legal standing, and thus provides no basis upon which the Secretary could make his decision. That was the ruling made by the CIT, and it is correct.

The CIT required the Secretary to re-make the decision about the extension of time, applying the criteria contained in the only legally applicable standard, the one set out in § 351.213(d)(1). Applying that standard, the Secretary granted the extension, and Baoding Mantong's request for review was effectively withdrawn. Commerce's protest of the CIT order is unavailing, as is GEO's support for it.

## CONCLUSION

For the foregoing reasons, the judgment of the CIT is affirmed.

## **AFFIRMED**