MINEBEA CO., LTD. and NMB Corporation, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee,

and

The Torrington Company, Defendant–Appellee.

No. 92–1289.

United States Court of Appeals, Federal Circuit.

Jan. 26, 1993.

Michael J. Brown, Tanaka, Ritger & Middleton, Washington, DC, argued, for plaintiffs-appellants. With him on the brief, were H. William Tanaka and Michele N. Tanaka.

A. David Lafer, Sr. Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellee, U.S. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief, were Stephen J. Powell, Chief Counsel for Import Admin., Berniece A. Browne, Sr. Counsel for Antidumping Litigation and Robert J. Heilferty, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce. James R. Cannon, Jr., Stewart & Stewart, Washington, DC, argued, for defendant-appellee, The Torrington Co. Eugene L. Stewart, Terence P. Stewart and David Scott Nance, Stewart & Stewart, Washington, DC, were on the brief, for defendant-appellee, The Torrington Co.

Before ARCHER, MICHEL, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Minebea Co., Ltd. and NMB Corporation (collectively Minebea) appeal from the judgment of the United States Court of International Trade upholding an antidumping duty order covering, *inter alia,* spherical plain bearings from Japan. Specifically, Minebea challenges the trial court's decision to sustain the determination of the Department of Commerce, International Trade Administration (ITA), that The Torrington Company had standing to file an antidumping duty petition on behalf of the domestic manufacturers of spherical plain bearings. *Minebea Co. v. United States,* 782 F.Supp. 117 (C.I.T.1992). Because the determination of the ITA was supported by substantial evidence on the record and was otherwise in accordance with law, we affirm.

## BACKGROUND

On March 31, 1988, Torrington filed a petition with the ITA requesting that the ITA investigate whether to impose antidumping duties on antifriction bearings, including spherical plain bearings produced and imported by Minebea from Japan. Pursuant to 19 U.S.C. § 1673a(b)(1) (1988), Torrington alleged that it was an interested party and that it was filing the petition on behalf of the domestic antifriction bearing industry. The ITA initiated an antidumping investigation on the basis of Torrington's petition.

During the course of the investigation, the ITA received a number of submissions from parties challenging Torrington's standing to file its petition on the ground that it did not file "on behalf of" the domestic industry as required by 19 U.S.C. § 1673a(b)(1). New Hampshire Ball Bearings (NHBB), a U.S. subsidiary of Minebea, was one of the domestic manufacturers of spherical plain bearings that challenged Torrington's standing.

The ITA adhered to its policy of presuming standing unless a majority of the do-

mestic industry affirmatively opposed the petition. See Antifriction Bearings from Japan, 53 Fed.Reg. 45,344 (Dep't Comm. 1988) (Preliminary Determination). In order to evaluate whether the opposition constituted a majority of the domestic industry, the ITA issued questionnaires to the parties challenging Torrington's standing. The questionnaires requested, among other things, that each party provide an estimate of its "percentage share of the U.S. market as it relates to the domestic production of antifriction bearings" and an estimate of its "percentage share of the U.S. market as it relates to the sale of antifriction bearings" for the various classes and kinds of bearings subject to the antidumping investigation.

Of the opposing parties responding to the questionnaires, NHBB was the only one to provide any information regarding spherical plain bearing production. NHBB reported its total domestic production of spherical plain bearings; it did not provide an estimate of the total U.S. production of spherical plain bearings or its percentage of such production. The information provided by NHBB was not deemed sufficient by the ITA to establish that a majority of the domestic industry opposed the petition. See Antifriction Bearings from Japan, 54 Fed.Reg. 19005 (Dep't Comm.1989) (Final Determination).

The ITA subsequently published its antidumping duty order covering, inter alia, spherical plain bearings from Japan. 54 Fed.Reg. 20904 (1989). Minebea appealed to the Court of International Trade challenging the ITA's determination that Torrington's antidumping duty petition was filed "on behalf of" the domestic spherical plain bearings industry. That court affirmed.

On appeal to this court, Minebea requests that the decision of the Court of International Trade be reversed and the antidumping duty order vacated on the ground that the ITA's standing determination was not supported by substantial evidence.

## DISCUSSION

 We review decisions of the Court of International Trade by applying a statutory standard of review to the underlying ITA determination. See Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 n. 10, 2 Fed.Cir. (T) 130, 133 n. 10 (Fed.Cir. 1984). We must determine whether that court correctly concluded that the ITA's standing determination was supported by substantial evidence on the record and was otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988); U.H.F.C. Co. v. United States, 916 F.2d 689, 696 (Fed.Cir.1990).

 This court has previously recognized that the ITA has considerable discretion in determining whether to initiate or maintain an antidumping investigation. In Suramerica de Aleaciones Laminadas, C.A. v. United States, 966 F.2d 660 (Fed. Cir.1992), we held that the ITA had broad discretion to decide whether to initiate an investigation based on a petition filed on behalf of an industry without necessarily determining that it was affirmatively supported by a majority of the domestic industry. In Suramerica, we concluded that the ITA's policy of presuming standing unless a majority of the domestic industry actively opposes the petition falls within the range of permissible construction of the statutory phrase "on behalf of." Id. at 667 (following Chevron U.S.A. Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

 Furthermore, in Trent Tube Division, Crucible Materials Corp. v. Avesta Sandvik Tube AB, 975 F.2d 807 (Fed.Cir. 1992), we held that the decision of the ITA and the U.S. International Trade Commission (ITC) to pursue an antidumping investigation to its conclusion was not dependent on continuing determinations that a majority of the domestic industry was or continued to be in support of the petition. The ITC argued that, under the ITA's construction of the statute, the requirement that a petition be filed on behalf of the domestic industry is "not a continuing jurisdictional prerequisite ... but rather is merely a pre-

liminary question left to [the ITA's] discretion." *Id.* at 812. The court in *Trent Tube* concluded that the ITA's construction was well within the range of permissible readings of the statute.

Minebea argues that *Oregon Steel Mills Inc. v. United States,* 862 F.2d 1541, 7 Fed.Cir. (T) 22 (Fed.Cir.1988), stands for the proposition that when there is a lack of industry support for an antidumping duty petition, the petitioner lacks standing. We disagree. As we stated in *Suramerica,* "[a]t most, *Oregon Steel* stands for the proposition that without a certain minimal level of support, [the ITA] may, but need not, revoke a duty order." 966 F.2d at 666. In *Oregon Steel,* we noted that it was not necessary to determine precisely what minimal level of support was required to sustain an antidumping duty order because in that case "[t]he lack of industry support ... is overwhelming. Moreover, the industry is not simply indifferent, but has expressed a positive desire to eliminate the antidumping order...." 862 F.2d at 1545 n. 4, 7 Fed.Cir. (T) at 28 n. 4. In the instant case, NHBB has not shown that there was an overwhelming lack of industry support for the petition or that the industry affirmatively opposed it. Indeed, NHBB was the only U.S. producer of spherical plain bearings to submit data in support of its opposition to the petition and in doing so failed to establish that a majority of the domestic industry opposed the petition.

We do not accept Minebea's argument that there was no evidence to support the ITA's determination in favor of Torrington's standing. In its effort to develop the administrative record, the ITA specifically requested market and production information relating to spherical plain bearings from the petition opponents. The fact that NHBB was the only opponent to respond to the request and that it did so with data that was inadequate was itself evidence that was substantial. The ITA concluded that NHBB failed to discharge its burden to show that a majority of the domestic industry opposed Torrington's petition with respect to spherical plain bearings. That conclusion was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927, 933, 3 Fed.Cir. (T) 44, 51 (Fed.Cir.1984) (citation omitted). The ITA's conclusion was a reasonable implementation of the broad discretion, recognized in *Suramerica* and *Trent Tube,* accorded to the ITA as an agency charged with administering the antidumping statutes. We will not substitute our own judgment when the ITA has exercised its discretion in a reasonable manner. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Accordingly, we hold that the ITA did not exceed its statutory authority in deciding in favor of Torrington's standing.

In the alternative, Minebea requests that we remand this case to the ITA and order the agency to reconsider its standing determination in view of information compiled by the ITC during the injury phase of the investigation. We reject that argument because nothing in the antidumping laws requires the ITA to consider data assembled by the ITC. Under the statutory scheme, the ITA is alone charged with the responsibility of determining whether an interested party has standing to file an antidumping duty petition, 19 U.S.C. § 1673a(b)(1) (1988), and whether to commence an investigation on the basis of that petition. 19 U.S.C. § 1673a(c) (1988). Once that determination is made, the ITC is then responsible for making a preliminary determination "whether there is a reasonable indication" that a domestic industry is being materially injured. 19 U.S.C. § 1673b(a) (1988). As we stated in *Suramerica* regarding the respective roles of the ITA and the ITC in determining whether standing exists to file an antidumping duty petition:

> [a]lthough both [the ITA] and the ITC are 'charged' with administering different parts of the Act, it is [the ITA] who determines that a petition is sufficient to cause the initiation of investigations— that the statutory requirements are satisfied. The ITC's position in its brief is that it defers to [the ITA's] initial determination, and that only [the ITA] can review that determination. This is a rea-

sonable and permissible interpretation of the Act's delineation of respective responsibilities.

966 F.2d at 665 n. 6. Thus, the ITA, as the agency responsible for assessing standing under the antidumping laws, may determine what information it should use in order to carry out its statutory duty.

Even if the ITA might have reached a different determination had it considered the ITC data, that does not invalidate its standing determination if it is supported by substantial evidence on the record, as it is here. The possibility of drawing different and inconsistent conclusions from the evidence does not prevent the ITA's determination from being supported by substantial evidence. The only question here is whether there is evidence which could reasonably lead to the determination reached by the ITA. *PPG Indus., Inc. v. United States*, 978 F.2d 1232, 1237 (Fed.Cir.1992). We conclude that there is.

### CONCLUSION

The ITA's determination that Torrington had standing to file an antidumping petition involving spherical plain bearings was supported by substantial evidence and was otherwise in accordance with law. Accordingly, the judgment of the Court of International Trade is affirmed.

AFFIRMED.