**Slip Op. 09-69**

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**AD HOC SHRIMP TRADE ACTION COMMITTEE, VERSAGGI SHRIMP CORPORATION, and INDIAN RIDGE SHRIMP COMPANY**,

Plaintiffs,

v.

**UNITED STATES**,

Defendant,

and

**EASTERN FISH COMPANY, INC.**,

Defendant-Intervenor.

</td><td>

**Before: Timothy C. Stanceu, Judge**

**Consol. Court No. 05-00192**

</td></tr>
</table>

## OPINION AND ORDER

[Following decision and remand by the United States Court of Appeals for the Federal Circuit, remanding the matter to the United States Department of Commerce to redetermine the scope of less-than-fair-value determinations in an antidumping proceeding.]

Dated: July 1, 2009

*Dewey Ballantine LLP* (*Bradford L. Ward*, *Linda A. Andros*, *Rory F. Quirk*, and *Mayur R. Patel*) for plaintiffs.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); *Christine J. Sohar* and *Peter J. Kaldes*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye & Warren LLP* (*Michael J. Coursey* and *Mary T. Staley*) for defendant-intervenor.

Stanceu, Judge:  On remand from the United States Court of Appeals for the Federal Circuit ("Court of Appeals"), the court determines that the International Trade Administration ("ITA"), United States Department of Commerce ("Commerce" or the "Department") erred when it excluded from the scope of its antidumping duty investigations, and resulting "less-than-fair-value" ("LTFV") determinations, an imported product known as "dusted shrimp," which is a frozen product consisting of shrimp coated with flour.  The court remands the matter to Commerce with instructions to reconsider its decisions to exclude dusted shrimp from the scope of the amended final LTFV determinations and redetermine the scope of those determinations in accordance with this Opinion and Order.

## I. BACKGROUND

Plaintiffs Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), Versaggi Shrimp Corporation ("Versaggi"), and Indian Ridge Shrimp Company ("Indian Ridge") (collectively "plaintiffs" or "petitioners") brought multiple actions, later consolidated, to contest six amended final affirmative LTFV antidumping determinations that Commerce issued in 2005 on certain imported frozen warmwater shrimp (the "subject merchandise") from each of the following countries: Brazil, Ecuador, India, the People's Republic of China ("China" or the "PRC"), the Socialist Republic of Vietnam ("Vietnam"), and Thailand (collectively, the "Exporting Countries").[1]  *See, e.g., Notice of Am. Final Determination of Sales at Less Than Fair Value and*

---

[1] The administrative record provided in this case, Consolidated Court No. 05-00192, sets forth the documents for the Thailand investigation.  Accordingly, the court cites to administrative record documents and Federal Register notices for Thailand.  For most citations to Federal Register notices, the court also provides the citations for parallel determinations made in the concurrent investigations of Brazil, Ecuador, India, the People's Republic of China ("China" or the "PRC"), and the Socialist Republic of Vietnam ("Vietnam").

*Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145

(Feb. 1, 2005) ("*Thailand Am. Final Determination & Order*").[2]  Each of the final and amended

final LTFV determinations excluded dusted shrimp from the scope of the investigation, and as a

result dusted shrimp was excluded from the scope of each of the six antidumping duty orders.

A.  Initiation of the Antidumping Duty Investigations

On December 31, 2003, plaintiff AHSTAC filed petitions ("Petitions") with Commerce

and the United States International Trade Commission ("Commission" or "ITC") seeking the

imposition of antidumping duties on a proposed class or kind of imports consisting of various

frozen and canned warmwater shrimp from Brazil, Ecuador, India, China, Vietnam, and Thailand

in accordance with the procedures of 19 U.S.C. §§ 1673 and 1673a(b) (2000).  *See, e.g., Letter*

*from Dewey Ballantine LLP to Sec'y of Commerce & Sec'y of Int'l Trade Comm'n* (Dec. 31,

2003) (Admin. R. Doc. No. 2) ("*Thailand Antidumping Petition*").  On February 4, 2004,

plaintiffs Versaggi and Indian Ridge joined AHSTAC in the Petitions.  *Letter from Dewey*

*Ballantine LLP to Sec'y of Commerce & Sec'y of Int'l Trade Comm'n* 2 (Feb. 4, 2004) (Admin.

---

[2] Commerce published, on the same day, five amended final less-than-fair-value
("LTFV") determinations and antidumping duty orders for the five other exporting countries.
*See Notice of Am. Final Determination of Sales at Less Than Fair Value and Antidumping Duty*
*Order: Certain Frozen Warmwater Shrimp from Brazil*, 70 Fed. Reg. 5143 (Feb. 1, 2005)
("*Brazil Am. Final Determination & Order*"); *Notice of Am. Final Determination of Sales at Less*
*Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from*
*Ecuador*, 70 Fed. Reg. 5156 (Feb. 1, 2005) ("*Ecuador Am. Final Determination & Order*");
*Notice of Am. Final Determination of Sales at Less Than Fair Value and Antidumping Duty*
*Order: Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5147 (Feb. 1, 2005) ("*India*
*Am. Final Determination & Order*"); *Notice of Am. Final Determination of Sales at Less Than*
*Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the People's*
*Republic of China*, 70 Fed. Reg. 5149 (Feb. 1, 2005) ("*China Am. Final Determination &*
*Order*"); *Notice of Am. Final Determination of Sales at Less Than Fair Value and Antidumping*
*Duty Order: Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 70 Fed.
Reg. 5152 (Feb. 1, 2005) ("*Vietnam Am. Final Determination & Order*").

R. Doc. No. 48); *see, e.g., Notice of Prelim. Determination of Sales at Less Than Fair Value,*

*Postponement of Final Determination, and Negative Critical Circumstances Determination:*

*Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 47,100, 47,100

n.1 (Aug. 4, 2004) ("*Thailand Prelim. Determination*").[3]

Following receipt of the Petitions, Commerce initiated antidumping duty investigations

under 19 U.S.C. § 1673a(b)(1).  *Notice of Initiation of Antidumping Duty Investigations: Certain*

*Frozen and Canned Warmwater Shrimp from Brazil, Ecuador, India, Thailand, the People's*

*Republic of China and the Socialist Republic of Vietnam,* 69 Fed. Reg. 3876, 3877 (Jan. 27,

2004) ("*Notice of Initiation*").  Commerce published an initiation notice, which preliminarily

defined the scope of its investigations to reflect plaintiffs' proposal in the Petitions.[4]  *Id.*  In

---

[3] *Notice of Prelim. Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp From Brazil*, 69 Fed. Reg. 47,081, 47,082 n.2 (Aug. 4, 2004) ("*Brazil Prelim. Determination*"); *Notice of Prelim. Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp From Ecuador*, 69 Fed. Reg. 47,091, 47,092 n.2 (Aug. 4, 2004) ("*Ecuador Prelim. Determination*"); *Notice of Prelim. Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Affirmative Prelim. Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp from India*, 69 Fed. Reg. 47,111, 47,111 n.1 (Aug. 4, 2004) ("*India Prelim. Determination*"); *Notice of Prelim. Determination of Sales at Less Than Fair Value, Partial Affirmative Prelim. Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp From the People's Republic of China*, 69 Fed. Reg. 42,654, 42,654 (July 16, 2004) ("*China Prelim. Determination*"); *Notice of Prelim. Determination of Sales at Less Than Fair Value, Negative Prelim. Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp From the Socialist Republic of Vietnam*, 69 Fed. Reg. 42,672, 42,672 (July 16, 2004) ("*Vietnam Prelim. Determination*").

[4] The Department's initiation notice states:

The scope of these investigations include certain warmwater shrimp and prawns, whether frozen or canned, wild-caught (ocean harvested) or farm-raised (produced

(continued...)

March 2004, the Commission issued its preliminary injury determination pursuant to

19 U.S.C. § 1673b(a) (2000), finding "a reasonable indication that an industry in the United

States is materially injured by reason of imports from [the Exporting Countries] of certain frozen

or canned warmwater shrimp and prawns" in the same scope of investigation. *Certain Frozen or*

*Canned Warmwater Shrimp and Prawns from Brazil, China, Ecuador, India, Thailand, and*

*Vietnam,* 69 Fed. Reg. 9842, 9842 (Mar. 2, 2004). Neither the Department's initiation notice nor

the Commission's preliminary determination mentioned the term "dusted shrimp" or specifically

referred to dusted shrimp as a product within the scope of the investigations.

---

(...continued)
> by aquaculture), head-on or head-off, shell-on or peeled, tail-on or tail-off,
> deveined or not deveined, cooked or raw, or otherwise processed in frozen or
> canned form.
>
> The frozen or canned warmwater shrimp and prawn products included in the
> scope of the investigations . . . are products which are processed from warmwater
> shrimp and prawns through either freezing or canning and which are sold in any
> count size.
>
> The products described above may be processed from any species of warmwater
> shrimp and prawns. . . .
>
> Frozen shrimp and prawns that are packed with marinade, spices or sauce are
> included in the scope of the investigations. In addition, food preparations, which
> are not "prepared meals," that contain more than 20 percent by weight of shrimp
> or prawn are also included in the scope of the investigations.
>
> Excluded from the scope are (1) breaded shrimp and prawns . . . ; (2) shrimp and
> prawns . . . commonly referred to as coldwater shrimp, in any state of processing;
> (3) fresh shrimp and prawns whether shell-on or peeled . . . ; (4) shrimp and
> prawns in prepared meals . . . ; and (5) dried shrimp and prawns.

*Notice of Initiation of Antidumping Duty Investigations: Certain Frozen and Canned Warmwater Shrimp from Brazil, Ecuador, India, Thailand, the People's Republic of China and the Socialist Republic of Vietnam,* 69 Fed. Reg. 3876, 3877 (Jan. 27, 2004) (footnotes omitted).

B.  The Scope Exclusion for Dusted Shrimp

Following the initiation of the antidumping duty investigations, Ocean Duke Corporation ("Ocean Duke"), an importer and wholesaler of the subject merchandise, with the support of Rubicon Resources LLP ("Rubicon"), an importer of the subject merchandise, requested that Commerce exclude "dusted shrimp" from the scope of the concurrent investigations on certain frozen and canned warmwater shrimp.  *See, e.g., Thailand Prelim. Determination*, 69 Fed. Reg. at 47,101 n.2.[5]  In rebuttal scope comments, plaintiffs objected to the exclusion of dusted shrimp and battered shrimp, arguing that because Ocean Duke and Rubicon had not "sufficiently and publicly defined" the products for which they were requesting exclusion, Commerce should not address the request.  *Mem. from Dir., Office 9, Imp. Admin., to Deputy Assistant Sec'y for Imp. Admin.* 7 (July 2, 2004) (Admin. R. Doc. No. 274) ("*July Scope Clarification Mem.*"). Thereafter, Ocean Duke, defendant-intervenor Eastern Fish Company, Inc. ("Eastern Fish"), and Long John Silver's, Inc. ("LJS") submitted additional comments arguing that dusted shrimp and battered shrimp fall within the meaning of the already-excluded "breaded shrimp."  *Id.* at 12-14. Plaintiffs argued, however, that they had "constructed the scope definition and scope exclusions with care such that as a general rule, all warmwater shrimp and prawns were presumptively within the scope of these investigations, with the exception of a small number of carefully defined and delimited exceptions."  *Id.* at 10.

---

[5] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,081 n.1; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,092 n.1; *India Prelim. Determination*, 69 Fed. Reg. at 47,111 n.2; *China Prelim. Determination*, 69 Fed. Reg. at 42,655; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,673.

After considering the interested parties' comments, Commerce found that "while substantial evidence exists to consider battered shrimp to fall within the meaning of the breaded shrimp exclusion identified in the scope of these proceedings, there is insufficient evidence to consider that shrimp which has been dusted falls within the meaning of 'breaded' shrimp."[6] *Thailand Prelim. Determination*, 69 Fed. Reg. at 47,102-03[7]; *see also July Scope Clarification Mem.* 18. However, Commerce also found that there was "sufficient evidence for the Department to consider excluding [dusted shrimp] from the scope of these proceedings provided an appropriate description can be developed." *Thailand Prelim. Determination*, 69 Fed. Reg.

---

[6] As Commerce explained,

> [T]he record presents insufficient evidence that breaded shrimp includes dusted shrimp. In fact, Customs Ruling HQ 953654 found the opposite in a very similar situation – dusted shrimp is distinct from battered or breaded shrimp. Although Ocean Duke asserts that the dusting applied to its shrimp changes flavor and appearance such that dusted shrimp is properly considered a preparation of shrimp similar to breaded, it has cited no other evidence to support that claim. Although [Ocean Duke Corporation, Rubicon Resources LLP, Eastern Fish Company, Inc., and Long John Silver's, Inc.] argue strenuously that [Commerce] should find the breaded shrimp exclusion includes dusted shrimp for a variety of reasons, they have not argued that dusted and breaded shrimp are considered the same product, or essentially the same product, by the industry or any authorities, as a definitional matter. In fact, they repeatedly argue the opposite – that dusted shrimp is an input, albeit a necessary one in their description, to breaded or battered shrimp without presenting evidence to substantiate their assertions. In so doing, they cannot logically treat these products as definitionally one and the same. Accordingly, with respect to this consideration, [Commerce] finds that the record evidence, and lack thereof, weighs against finding dusted shrimp to be included within the meaning of breaded shrimp.

*Mem. from Dir., Office 9, Imp. Admin., to Deputy Assistant Sec'y for Imp. Admin.* 20 (July 2, 2004) (Admin. R. Doc. No. 274).

[7] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,084; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,094; *India Prelim. Determination*, 69 Fed. Reg. at 47,113; *China Prelim. Determination*, 69 Fed. Reg. at 42,660; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,676.

at 47,103[8]; *see also July Scope Clarification Mem.* 18. Commerce cited concerns, raised by

plaintiffs, that exclusion of dusted shrimp based on "Ocean Duke's requests, due to their lack of

specificity, could invite circumvention of a subsequent antidumping duty order in that batter (or

dust) added to the shrimp might be removed after entry." *July Scope Clarification Mem.* 22.

Accordingly, Commerce solicited further comments from interested parties, in anticipation of its

final LTFV determination, to "enumerate and describe a clear, administrable definition of dusted

shrimp." *Id.* at 23. Commerce noted that although there was insufficient evidence to subsume

dusted shrimp under the meaning of breaded shrimp, the evidence before it "strongly suggests

that dusted shrimp may indeed be in the same category as breaded and battered shrimp" but it had

been "unclear where the separation lies between subject merchandise and dusted shrimp." *Id.*

at 25.

In August 2004, Commerce issued its preliminary LTFV determinations, which found

that "certain frozen and canned warmwater shrimp," excluding breaded and battered shrimp, but

not excluding dusted shrimp, from the Exporting Countries is being, or is likely to be, sold in the

United States at LTFV and invited interested parties to comment on the preliminary LTFV

determination. *See, e.g., Thailand Prelim. Determination*, 69 Fed. Reg. at 47,100, 47,102 & n.6,

---

[8] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,084; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,094; *India Prelim. Determination*, 69 Fed. Reg. at 47,113; *China Prelim. Determination*, 69 Fed. Reg. at 42,660; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,676.

47,102-03.[9]  Eastern Fish and LJS responded by proposing a definition of dusted shrimp based on various physical requirements, as well as a testing protocol by which United States Customs and Border Protection could monitor compliance.  *Mem. from Senior Enforcement Coordinator, China/NME Group, to Acting Deputy Assistant Sec'y for Imp. Admin.* 4-13 (Nov. 29, 2004) (Admin. R. Doc. No. 453) ("*Nov. Scope Clarification Mem.*").  Plaintiffs, on the other hand, did not propose a definition for dusted shrimp.  Rather, plaintiffs continued to argue that there was no clear, administrable way to define dusted shrimp and repeated their initial concerns that exclusion of dusted shrimp would facilitate circumvention.  *Id.* at 16 ("Petitioners stress that their original concerns regarding excluding 'dusted' shrimp remain and that a dusted shrimp exclusion is unadministrable and opens the door to circumvention."), 22.

Commerce solicited comments to develop a definition of dusted shrimp "to create a workable and enforceable definition of dusted shrimp . . . , within the context of 'breaded' shrimp." *Id.* at 22.  Commerce adopted Eastern Fish and LJS's proposed definition of dusted shrimp, determining that the definition was "adequate to define 'certain dusted shrimp' for the purposes of these investigations," *id.* at 22-23, and "does not encourage removal of dusting after importation as a means to circumvent the order." *Id.* at 25.  Commerce noted that "no other interested party besides Eastern Fish and LJS provided an alternative definition of 'dusting'" and concluded that "the exclusion of dusted shrimp can be defined and administered effectively." *Id.* at 26.  Commerce proceeded to exclude dusted shrimp from the scope of its final LTFV

---

[9] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,081, 47,083 n.6, 47,084; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,091, 47,093 n.5, 47,094; *India Prelim. Determination*, 69 Fed. Reg. at 47,111, 47,113 & n.6; *China Prelim. Determination*, 69 Fed. Reg. at 42,654, 42,659 n.8, 42,660; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,672, 42,676 & n.4, 42,677.

determinations.  *See, e.g., Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918, 76,919-20 (Dec. 23, 2004) ("*Thailand Final Determination*").[10]

### C.  The Antidumping Duty Orders

The Department's final LTFV determinations found that the goods within the scope of the investigations were being, or likely to be, sold at less than fair value.  *Id.* at 76,918.[11]  Plaintiffs filed comments thereafter alleging as a ministerial error the exclusion of dusted shrimp from the scope of the investigations and arguing that Commerce failed to consider plaintiffs' submitted declaration regarding dusted shrimp.  *Mem. from AD/CVD Operations, Office 2, to Dir., Office 2, AD/CVD Operations* 1-2 (Jan. 24, 2005) (Admin. R. Doc. No. 484).  Commerce dismissed plaintiffs' ministerial error allegations, stating that "[t]he Department's decision to exclude dusted shrimp from the scope of th[ese] investigation[s] was an intentional decision, not a

---

[10] *Notice of Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From Brazil*, 69 Fed. Reg. 76,910, 76,911 (Dec. 23, 2004) ("*Brazil Final Determination*"); *Notice of Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From Ecuador*, 69 Fed. Reg. 76,913, 76,915 (Dec. 23, 2004) ("*Ecuador Final Determination*"); *Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From India*, 69 Fed. Reg. 76,916, 76,917 (Dec. 23, 2004) ("*India Final Determination*");  *Notice of Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From the People's Republic of China*, 69 Fed. Reg. 70,997, 71,001 (Dec. 8, 2004) ("*China Final Determination*"); *Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From the Socialist Republic of Vietnam*, 69 Fed. Reg. 71,005, 71,008 (Dec. 8, 2004) ("*Vietnam Final Determination*").

[11] *Brazil Final Determination*, 69 Fed. Reg. at 76,910; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914; *India Final Determination*, 69 Fed. Reg. at 76,916; *China Final Determination*, 69 Fed. Reg. at 70,997; *Vietnam Final Determination*, , 69 Fed. Reg. at 71,005.

ministerial error." *Id.* at 3.  On February 1, 2005, Commerce published amended final LTFV

determinations to correct various ministerial errors in its initial final LTFV determinations and

issued the antidumping duty orders.  The amended final LTFV determinations and antidumping

duty orders contained the scope exclusion for dusted shrimp.  *Thailand Am. Final Determination*

*& Order*, 70 Fed. Reg. at 5147.[12]

### D.  Court Proceedings

In this litigation, plaintiffs, who were petitioners in the underlying antidumping

proceedings, sought as relief a remand directing Commerce to amend the antidumping duty

orders to include dusted shrimp.  The United States Court of International Trade dismissed the

consolidated action because it concluded that it was unable to grant the relief plaintiffs had

requested.  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 31 CIT __, __,

473 F. Supp. 2d. 1336, 1348 (2007).  The Court of International Trade reasoned that because the

final affirmative injury determination of the Commission did not include dusted shrimp, and

because the plaintiffs had not contested the final affirmative injury determination, the requested

relief of a remand ordering Commerce to amend the antidumping duty orders to include dusted

shrimp was unavailable.  *Id.* at __, 473 F. Supp. 2d. at 1346-48.

The Court of Appeals, affirming in part and reversing in part, held that the Court of

International Trade, although correctly concluding that the requested relief of a remand to amend

the antidumping duty orders was unavailable because of the absence of a final Commission

---

[12] *Brazil Am. Final Determination & Order*, 70 Fed. Reg. at 5145; *Ecuador Am. Final Determination & Order*, 70 Fed. Reg. at 5158; *India Am. Final Determination & Order*, 70 Fed. Reg. at 5148-49; *China Am. Final Determination & Order*, 70 Fed. Reg. at 5152 ; *Vietnam Am. Final Determination & Order*, 70 Fed. Reg. at 5156.

injury determination, erred in dismissing the case. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1375 (Fed. Cir. 2008). The Court of Appeals concluded that plaintiffs had sought, in addition to amendment of the antidumping duty orders, a declaratory judgment that Commerce acted unlawfully in excluding dusted shrimp from the scope of the antidumping investigation. *Id.* at 1381-82. The Court of Appeals held that the Court of International Trade impermissibly declined to adjudicate plaintiffs' claim on the merits, explaining that the Court of International Trade erred in reasoning that its lack of authority to provide a remedy also precluded the court from adjudicating on the merits plaintiffs' claim as to the lawfulness of the final amended LTFV determinations. *Id.* at 1382-83. The Court of Appeals vacated the dismissal and remanded the action, directing the Court of International Trade to "address the merits of AHSTAC's claim that 'dusted shrimp' should be excluded from the scope of Commerce's final determination." *Id.* at 1385.

## II. DISCUSSION

Before the court is plaintiffs' motion under USCIT Rule 56.2 for judgment upon the agency record. In support of this motion, plaintiffs argue that the proposed scope of the investigations as set forth in the Petitions unambiguously included dusted shrimp, the exclusion of which from the scope of the orders "both ignores the clear intent of the Petitions, and fails to afford requisite deference to the Petitions." Pls. Ad Hoc Shrimp Trade Action Comm. et al. Mem. of Law in Support of J. on the Agency R. Pursuant to Rule 56.2 at 10 ("Pls.' Br."). Defendant counters that scope-related terms in the Petitions were ambiguous and ill-defined, requiring clarification so that the scope could be administrable. Def.'s Opp'n to Pls.' Mot. for J. on the Agency R. 24 ("Def.'s Br."). According to defendant, the Department's decisions to

exclude dusted shrimp from the scope of its investigations were simply a clarification of the ambiguously-defined terms of the Petitions, and it is "well within Commerce's settled discretion to clarify the scope of an investigation." *Id.* at 15. Defendant-intervenors add that "petitioners are not entitled to any deference to proclaim, after initiation, what products they did and did not intend [a petition's] language to cover." Def.-Intervenor's Resp. Br. 18 ("Def.-Intervenor's Br."). They also state that courts "have ruled that a petitioner cannot compensate for its failure to clearly define its requested scope in the petition by including therein a catch-all phrase." *Id.* at 22.

In ruling on plaintiffs' Rule 56.2 motion, the court considers the Department's LTFV determinations, and specifically the Department's decisions therein to exclude dusted shrimp from the scope of those determinations, according to the standard of review provided in 19 U.S.C. § 1516a(b)(1)(B)(i), under which the court must set aside a final determination that is "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). In addition, the court must review the determinations based on the reasoning Commerce put forth in those determinations and, in so doing, must consider whether the determinations are based on "[a] rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

Under the statutory scheme, Commerce owes deference to the intent of the proposed scope of an antidumping investigation as expressed in an antidumping petition. *See* 19 U.S.C. §§ 1673, 1673a(b); *NTN Bearing Corp. of Am. v. United States*, 14 CIT 623, 626, 747 F. Supp. 726, 730 (1990) ("If the petition is deemed sufficient, the ITA is statutorily obliged to insure that

the proceedings are maintained in a form which corresponds to the petitioner's clearly evinced intent and purpose." (citing *Mitsubishi Elec. Corp. v. United States*, 12 CIT 1025, 700 F. Supp. 538 (1988), *aff'd*, 898 F.2d 1577, 1579 (Fed. Cir. 1990))). However, Commerce retains authority to define the scope of the investigation and may depart from the scope as proposed by a petition if it determines that petition to be "overly broad, or insufficiently specific to allow proper investigation, or in any other way defective." *NTN Bearing Corp.*, 14 CIT at 627, 747 F. Supp. at 731 (citing *Torrington Co. v. United States*, 14 CIT 507, 745 F. Supp. 718 (1990), *aff'd*, 938 F.2d 1276, 1278 (Fed. Cir. 1991)).

This case presents, first, the question of whether the Petitions that were filed by the domestic industry proposed to include dusted shrimp within the scope of the sought antidumping duty investigation or investigations. *See Minebea Co. v. United States*, 16 CIT 20, 22, 782 F. Supp. 117, 120 (1992) ("When a question arises as to whether a particular product is within the scope of an *investigation*, the ITA first must determine whether the petition covers that product. If the petition is ambiguous, Commerce then examines additional documentary evidence."), *aff'd* 984 F.2d 1178, 1182 (Fed. Cir. 1993). If the Petitions included dusted shrimp within the scope of the proposed investigations, the issue then arises whether Commerce acted according to law in effecting, despite the Petitions, the dusted shrimp exclusion that is at issue in this case. For the reasons discussed below, the court concludes that although dusted shrimp appears to fall within the proposed scope language in the Petitions, Commerce never made a determination on this question in the final or amended final LTFV determinations. Because of its failure to do so, Commerce was not in a position to give the deference that was due the scope of the proposed investigation as set forth in the Petitions. Accordingly, the court is unable to conclude that

Commerce acted lawfully in excluding dusted shrimp from the amended final LTFV determinations.

The court cannot agree with the arguments of defendant and defendant-intervenor that the Petitions did not propose the inclusion of dusted shrimp, as allegedly illustrated by ambiguous and ill-defined scope-related terms in the Petitions. *See* Def.'s Br. 24; Def.-Intervenor's Br. 18-23. The Petitions proposed that the scope of the investigations include "certain warmwater shrimp and prawns, whether frozen or canned, wild-caught (ocean harvested) or farm-raised (produced by aquaculture), head-on or head-off, shell-on or peeled, tail-on or tail-off, deveined or not deveined, cooked or raw, or otherwise processed in frozen or canned form," *Thailand Antidumping Petition*, Ex. I-1 at 1, 5 (footnotes omitted), and exclude "breaded shrimp and shrimp . . . commonly referred to as coldwater shrimp." *Id.*, Ex. I-1 at 5. The proposed scope language included food preparations, other than prepared meals, containing more than twenty percent by weight of shrimp. *Id.*, Ex. I-1 at 2. Although the Petitions did not specifically mention dusted shrimp, they proposed that "[a]ll products that meet the physical description [would be] within the scope of th[ese] investigation[s] unless explicitly excluded" and provided various examples. *Id.* The Petitions added that, as an illustration, "minor additions to frozen or canned warmwater shrimp are not sufficient to remove the product from the scope of the investigation[s]." *Id.*

Dusted shrimp, when considered according to all descriptions contained in the relevant submissions made to the record, would appear to be within the proposed scope of the Petitions. The use in the Petitions of the broad and unqualified term "otherwise processed" speaks to the inclusion of dusted shrimp, even if the addition of flour were considered to be other than a

"minor addition," and even if dusted shrimp were not considered to be a "food preparation." An ambiguity conceivably could arise from the proposed scope language in the Petitions over whether dusted shrimp are a form of "breaded shrimp," a product that the Petitions proposed for exclusion from the scope. *Id.*, Ex. I-1 at 2-3, 5. This is a doubtful proposition, however, because shrimp coated with flour would seem, as a matter of plain meaning, to be physically distinct from shrimp coated with breading. Regardless, Commerce resolved any potential ambiguity that may have arisen when, during the administrative proceeding, it decided not to include dusted shrimp within the meaning it assigned to the term "breaded shrimp." *Thailand Prelim. Determination*, 69 Fed. Reg. at 47,102-03.[13] Upon the issuance of the preliminary determinations and throughout the remainder of the investigations, Commerce considered dusted shrimp not to be described by the term "breaded shrimp" (although Commerce, at the time it issued the preliminary determinations, had not yet made final decisions on the separate issue of whether to exclude dusted shrimp from the scope of the investigations). *See id.* at 47,103.[14]

Although Commerce decided not to include dusted shrimp within the meaning it assigned to the term "breaded shrimp," Commerce never made a determination of whether dusted shrimp were within the scope of the investigation proposed by the Petitions. The Department's decisions to exclude dusted shrimp occurred only after Commerce received, in response to its solicitation

---

[13] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,084; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,094; *India Prelim. Determination*, 69 Fed. Reg. at 47,113; *China Prelim. Determination*, 69 Fed. Reg. at 42,660; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,676.

[14] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,084; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,094; *India Prelim. Determination*, 69 Fed. Reg. at 47,113; *China Prelim. Determination*, 69 Fed. Reg. at 42,660; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,676-77.

in the preliminary determinations, comments of Eastern Fish and LJS setting forth a proposed

definition for dusted shrimp. *See Letter from Collier Shannon Scott to Sec'y of Commerce*

(Aug. 2, 2004) (Admin. R. Doc. No. 354) (submitting comments on behalf of Eastern Fish and

LJS); *Letter from Dewey Ballantine LLP to Sec'y of Commerce* (Aug. 2, 2004) (Admin. R. Doc.

No. 355) (submitting comments on behalf of petitioners); *Letter from Dewey Ballantine LLP to*

*Sec'y of Commerce* (Oct. 26, 2004) (Admin. R. Doc. No. 433) (submitting a case brief in the

Thailand investigation); *Letter from Dewey Ballantine LLP to Sec'y of Commerce* (Nov. 1, 2004)

(Admin. R. Doc. No. 437) (submitting a rebuttal brief in the Thailand investigation). The

proposed definition described "dusted shrimp" as:

> [A] shrimp-based product that (1) is produced from fresh (or thawed-from-frozen)
> and peeled shrimp; (2) to which a "dusting" layer of rice or wheat flour of at least
> 95 percent purity has been applied; (3) so that the entire surface of the shrimp
> flesh is thoroughly and evenly coated with flour; and (4) the non-shrimp content
> of the end product constitutes between 4 to 10 percent of the product's total
> weight after being dusted, but prior to being frozen; and (5) is subjected to IQF
> freezing immediately after application of the dusting layer.

*Nov. Scope Clarification Mem.* 5 (footnotes omitted). The Department's apparent focus in the

investigation was on development of a definition of dusted shrimp, not the question of whether

dusted shrimp was within the scope of the investigation proposed by the Petitions.

A difficulty the court encounters in reviewing the actual decisions that plaintiffs contest

in this case, *i.e.*, the decisions to exclude dusted shrimp, is that these decisions are not

accompanied by any reasoning or explanation in the amended final LTFV determinations. Each

of the six Federal Register notices setting forth an amended final LTFV determination and an

antidumping duty order announces, without elaboration, that "certain dusted shrimp" are

excluded from the scope of the order, defining the excluded product as follows:

> Dusted shrimp is a shrimp-based product: 1) that is produced from fresh (or thawed-from-frozen) and peeled shrimp; 2) to which a "dusting" layer of rice or wheat flour of at least 95 percent purity has been applied; 3) with the entire surface of the shrimp flesh thoroughly and evenly coated with the flour; 4) with the non-shrimp content of the end product constituting between four and 10 percent of the product's total weight after being dusted, but prior to being frozen; and 5) that is subjected to individually quick frozen ("IQF") freezing immediately after application of the dusting layer.

*Thailand Am. Final Determination & Order*, 70 Fed. Reg. at 5147.[15]  Nor do the Federal Register notices of the six final LTFV determinations, which were published on December 8, 2004 for China and Vietnam and on December 23, 2004 for the other four Exporting Countries, set forth any reasoning, either in the text or in the incorporated Issues and Decisions Memoranda, upon which Commerce decided to exclude dusted shrimp from the scope of a final investigation and determination.  Instead, Commerce announced in the final LTFV determinations, without elaboration, that "[e]xcluded from the scope are . . . dusted shrimp."  *Thailand Final Determination*, 69 Fed. Reg. at 76,919.[16]

Each notice of a final LTFV determination contains a reference to an internal, unpublished Commerce memorandum ("Scope Clarification Memorandum") dated November 29, 2004.  *Thailand Final Determination*, 69 Fed. Reg. at 76,919 (citing *Nov. Scope*

---

[15] *Brazil Am. Final Determination & Order*, 70 Fed. Reg. at 5145; *Ecuador Am. Final Determination & Order*, 70 Fed. Reg. at 5158; *India Am. Final Determination & Order*, 70 Fed. Reg. at 5148-49; *China Am. Final Determination & Order*, 70 Fed. Reg. at 5152; *Vietnam Am. Final Determination & Order*, 70 Fed. Reg. at 5156.

[16] *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,915; *India Final Determination*, 69 Fed. Reg. at 76,917; *China Final Determination*, 69 Fed. Reg. at 71,001; *Vietnam Final Determination*, 69 Fed. Reg. at 71,008.

*Clarification Mem.*).[17]  The Department's failure to incorporate explicitly the Scope Clarification Memorandum by reference into the final or amended final LTFV notices raises the question of whether any reasoning set forth in that memorandum is properly before the court as part of the contested determinations.  Nevertheless, the court need not decide this question, because the court, upon examining the Scope Clarification Memorandum, finds that the reasoning set forth therein is inadequate, in any event, to support the Department's decisions to exclude dusted shrimp.  The Scope Clarification Memorandum does not contain an analysis of the question of whether dusted shrimp fall within the scope of the proposed investigation as set forth in the Petitions.  For instance, Commerce does not conclude therein that dusted shrimp are *other* than frozen shrimp that have been "processed."  Nor does the memorandum conclude that the dusting layer on the product is other than a "minor addition" or that dusted shrimp is not a food preparation containing more than twenty percent by weight of shrimp.

The Scope Clarification Memorandum does, however, state several findings and conclusions in support of the Department's decisions to exclude dusted shrimp from the scope of the investigations.  First, it addresses the matter of an adequate definition for dusted shrimp, stating that "[b]ased upon the submissions of interested parties, we determine that the definition proposed by Eastern Fish and LJS is adequate to define 'certain dusted shrimp' for purposes of these investigations." *Nov. Scope Clarification Mem.* 22-23.  The memorandum states that Commerce considers the definition proposed by Eastern Fish and LJS to be clear and administrable.  *Id.* at 26.  Second, the memorandum states that "[s]pecifically, the Department

---

[17] *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914; *India Final Determination*, 69 Fed. Reg. at 76,917; *China Final Determination*, 69 Fed. Reg. at 71,001; *Vietnam Final Determination*, 69 Fed. Reg. at 71,007.

concludes that the proposed definition of dusted shrimp is comprised of components that create clear physical characteristics that separate dusted shrimp from subject merchandise." *Id.* at 23. Citing the criteria set forth in *Diversified Products Corp. v. United States*, 6 CIT 155, 572 F. Supp. 883 (1983), the memorandum concludes that "dusted shrimp is a separate class or kind of merchandise more similar to battered and breaded shrimp, which are outside the scope of these investigations, than the subject merchandise" and that "the addition of dusting material to shrimp physically changes the product significantly enough that it differs from otherwise-subject merchandise." *Id.* at 24 & n.31. With respect to several of the *Diversified Products* criteria, Commerce found that dusted shrimp is an intermediate product used for the purpose of making breaded and battered shrimp. *Id.* Third, with respect to concerns raised by petitioners about circumvention, Commerce relied on evidence placed on the record by Eastern Fish and LJS that removal of the dusting layer would be costly, time consuming and fatal to product quality; according to this evidence, Commerce concluded that circumvention accomplished by removing the flour from the product would be unlikely to occur. *Id.* at 25.

The court is unpersuaded by the three reasons that Commerce put forth in support of its decisions to exclude dusted shrimp from the scope of the investigations. First, although a clear and administrable definition is a *requirement* for an exclusion of dusted shrimp, it is not a *rationale* for such an exclusion. The general scope language already appeared to encompass all forms of processed shrimp, and of food preparations containing twenty percent by weight of shrimp, that were not specifically excluded. *See Thailand Final Determination*, 69 Fed. Reg. at

76,919[18] ("The scope of this investigation includes certain warmwater shrimp and prawns, whether frozen or canned,[19] . . . head-on or head-off, shell-on or peeled, tail-on or tail-off, deveined or not deveined, cooked or raw *or otherwise processed* . . . ." (emphasis added; footnote omitted)).  Therefore, a precise definition of dusted shrimp was needed only to make a dusted shrimp *exclusion*, rather than the scope generally, administrable.  The court, for this reason, rejects defendant's argument, Def.'s Br. 24, that the scope-related terms in the Petitions were ambiguous and ill-defined, requiring clarification so that the scope could be administrable.  For the same reason, the court disagrees with the assessment of defendant-intervenors, *see* Def.-Intervenor's Br. 18-40, that Commerce acted properly in excluding dusted shrimp in response to plaintiffs' failure to define the requested scope clearly.

The second rationale offered in the Scope Clarification Memorandum is also unconvincing.  The memorandum states that "dusted shrimp is a separate class or kind of merchandise more similar to battered and breaded shrimp, which are outside the scope of these investigations, than the subject merchandise" and that "the addition of dusting material to shrimp physically changes the product significantly enough that it differs from otherwise-subject

---

[18] *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914-15; *India Final Determination*, 69 Fed. Reg. at 76,916-17; *China Final Determination*, 69 Fed. Reg. at 71,000; *Vietnam Final Determination*, 69 Fed. Reg. at 71,007.

[19] Commerce excluded imported canned shrimp from the scope of the antidumping duty orders because the Commission found canned shrimp to be a separate like product, on which it issued a negative final determination.  *See Notice of Am. Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145, 5145 n.1 (Feb. 1, 2005); *Brazil Am. Final Determination & Order*, 70 Fed. Reg. at 5143 n.1; *Ecuador Am. Final Determination & Order*, 70 Fed. Reg. at 5156 n.1; *India Am. Final Determination & Order*, 70 Fed. Reg. at 5147 n.1; *China Am. Final Determination & Order*, 70 Fed. Reg. at 5149 n.1; *Vietnam Am. Final Determination & Order*, 70 Fed. Reg. at 5152 n.1.

merchandise." *Nov. Scope Clarification Mem.* 24. In concluding that dusting creates a physical characteristic separating dusted shrimp from "subject merchandise," the memorandum assumes, without justification and contrary to general scope language that appears to include dusted shrimp, that dusted shrimp is *not* subject merchandise. Again, according to the general scope language, "subject merchandise" appeared to include not only all forms of "processed" frozen warmwater shrimp that were not specifically excluded, but also food preparations containing more than twenty percent by weight of warmwater shrimp, so long as the finished product was not a prepared meal. *See, e.g., Thailand Final Determination*, 69 Fed. Reg. at 76,919.[20] The scope was not limited to frozen shrimp that lacked any form of a coating, seasoning, marinade or sauce. *See, e.g., id.*[21] Commerce specifically decided, for example, that the scope included frozen shrimp scampi. *See, e.g., id.*[22] Battered and breaded shrimp also appear to fall within the general scope language–because they would appear to be forms of processed shrimp, if not food preparations–and are placed outside the scope *only* as a result of a specific exclusion. Therefore, the finding that dusted shrimp is a separate class or kind of merchandise from the "subject merchandise" is illogical and unsupported by the record. Additionally, the Department's finding that dusted shrimp is an intermediate product used in making breaded and battered shrimp lends

---

[20] *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914-15; *India Final Determination*, 69 Fed. Reg. at 76,917; *China Final Determination*, 69 Fed. Reg. at 71,000; *Vietnam Final Determination*, 69 Fed. Reg. at 71,007.

[21] *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914; *India Final Determination*, 69 Fed. Reg. at 76,917; *China Final Determination*, 69 Fed. Reg. at 71,000; *Vietnam Final Determination*, 69 Fed. Reg. at 71,007.

[22] *China Final Determination*, 69 Fed. Reg. at 71,000; *Vietnam Final Determination*, 69 Fed. Reg. at 71,007; *Brazil Final Determination*, 69 Fed. Reg. at 76,911; *Ecuador Final Determination*, 69 Fed. Reg. at 76,914; *India Final Determination*, 69 Fed. Reg. at 76,916.

no support to the Department's decisions to exclude dusted shrimp from the scope of the investigations and instead supports the Department's position that dusted shrimp are not breaded shrimp and, therefore, do not fall within the breaded/battered shrimp exclusion.

The third rationale set forth in the Scope Clarification Memorandum, that imports of dusted shrimp are not likely to result in circumvention of an antidumping duty order, is inadequate because it is irrelevant to the question Commerce was deciding at the time. Analyzing the possibility of circumvention is relevant when Commerce is considering whether to include in the scope a product that resulted from the alteration of subject merchandise because inclusion of the product within the scope would prevent circumvention of the resulting order. *See* 19 U.S.C. § 1677j (2000). In this case, however, dusted shrimp appeared to be within the scope as defined by Commerce in the notice of initiation and the preliminary LTFV determinations. *Notice of Initiation*, 69 Fed. Reg. at 3877; *see, e.g., Thailand Prelim. Determination*, 69 Fed. Reg. at 47,102-03.[23] Commerce found, essentially, that due to cost considerations and the deleterious effects on the product, it was unlikely that anyone would attempt to remove the dusting layer of flour after importation. *Nov. Scope Clarification Mem.* 25. Although there was record evidence supporting such a finding, the finding itself does not bear on the question Commerce was required to decide in resolving the dusted shrimp issue in the final LTFV determinations. As discussed above, that question was whether to define the scope of the final LTFV determinations such that dusted shrimp, for the first time, would be

---

[23] *Brazil Prelim. Determination*, 69 Fed. Reg. at 47,083-84; *Ecuador Prelim. Determination*, 69 Fed. Reg. at 47,093-94; *India Prelim. Determination*, 69 Fed. Reg. at 47,113; *China Prelim. Determination*, 69 Fed. Reg. at 42,659-60; *Vietnam Prelim. Determination*, 69 Fed. Reg. at 42,676-77.

expressly excluded. The question properly related to such matters as whether dusted shrimp were included in the proposed scope of the investigations as stated in the Petitions and whether the scope could be administered adequately without an exclusion for dusted shrimp. A conclusion that excluding a product from the scope would not likely lead to circumvention of the order as applied to a type of subject merchandise *other than* dusted shrimp (in this instance, frozen shrimp *without* a coating of flour) was not a valid rationale for the decisions Commerce ultimately made.

Defendant relies on three decisions of the Court of Appeals to support its argument that Commerce had ample discretion to exclude dusted shrimp from the scope of the LTFV determinations, arguing that these three precedents are controlling authority on the issue presented in this case. Def.'s Br. 21. Defendant relies on *Mitsubishi Electric Corp. v. United States*, 898 F.2d 1577, 1583 (Fed. Cir. 1990), for the principle that Commerce has inherent discretion to ascertain the scope of its orders, the exercise of which "'must reflect [Commerce's] judgment regarding the scope and form of an order that will best effectuate the purpose of the antidumping laws and the violation found.'" *Id.* at 22 (quoting *Mitsubishi Elec. Corp.*, 898 F.2d at 1583). Defendant-intevenor also relies on *Mitsubishi Electric Corp.*, pointing to language in the opinion stating that "[t]he responsibility to determine the proper scope of the investigation and of the antidumping order . . . is that of the Administration, not of the complainant before the agency.'" *Mitsubishi Elec. Corp.*, 898 F.2d at 1582; Def.-Intervenor's Br. 2. *Mitsubishi Electric Corp.* did not involve an issue analogous to the issue presented by this case and instead involved the Department's broad formulation of scope to encompass certain subassemblies in an antidumping duty investigation on cellular mobile telephones. *See Mitsubishi Elec. Corp.*,

898 F.2d at 1581. The case did not address the extent of the Department's authority to narrow

the scope from that which a petitioner claims to have proposed, and the holding therein does not

signify that Commerce may exercise that authority unreasonably. Defendant also relies on

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) and *Tak Fat Trading Co. v.*

*United States*, 396 F.3d 1378 (Fed. Cir. 2005). Def.'s Br. 14, 21. Defendant focuses the court's

attention on language in the *Duferco* opinion that "[i]t is the responsibility of the agency, not

those who initiated the proceedings, to determine the scope of the final orders." *Duferco*, 296

F.3d at 1097; Def.'s Br. 14. Neither this language, which does not address the specific issue

presented by this case, nor the holding in *Duferco* supports defendant's argument. *Duferco*

involved a challenge to a scope ruling construing an already-issued antidumping duty order, not a

challenge to the Department's scope language as set forth in a final LTFV determination and the

resulting antidumping duty order. *See Duferco*, 296 F.3d at 1089-94. *Duferco* stands for the

principle that Commerce, in making a scope ruling *after* the issuance of an antidumping duty

order, lacks the authority to construe scope language in the order to cover certain merchandise if

there is no language in the order that includes or can reasonably be interpreted to include that

merchandise. *See id.* at 1096-98. *Tak Fat Trading Co.*, like *Duferco*, involved a scope ruling

construing an antidumping duty order and therefore is also inapposite. *See Tak Fat Trading Co.*

396 F.3d at 1380-82. The case turned on the Department's construction of language in an order

on certain preserved mushrooms that specifically excluded from the scope of the order

mushrooms that had been marinated, acidified, or pickled. *Id.* at 1386. The Court of Appeals

concluded that Commerce had construed permissibly the language by which the order excluded

marinated, acidified, or pickled mushrooms. *Id.* Although *Tak Fat Trading Co.* involved an

antidumping duty order that contained scope language different from that which had been proposed in the petition, 396 F.3d at 1383-84, the Department's authority to adopt scope language different from that proposed in the petition was not at issue in the case. Contrary to defendant's arguments, none of the three cited precedents of the Court of Appeals is controlling authority under which the court must affirm the exclusion of dusted shrimp from the scope of the LTFV investigations.

### III. CONCLUSION

In summary, the court concludes that the Department's decisions to exclude dusted shrimp from the scope of the final LTFV determinations were contrary to law because they were unsupported by any valid reason. Commerce failed to consider, and failed to resolve, the question of whether dusted shrimp is within the proposed scope of the antidumping investigation or investigations sought by the Petitions. Although Commerce has discretion to make exclusions from the scope, even when doing so appears to be contrary to the proposed scope as set forth in a petition, it must exercise this authority reasonably. The three reasons set forth in the Scope Clarification Memorandum in support of the exclusion, for the reasons discussed in this Opinion and Order, do not suffice. Accordingly, the court is directing that Commerce reconsider and redetermine, in accordance with this Opinion and Order, the scope of the final and amended final LTFV determinations with respect to the issue of the inclusion of dusted shrimp.

## ORDER

Pursuant to the mandate of the Court of Appeals for the Federal Circuit issued in *Ad Hoc Shrimp Trade Action Committee v. United States*, 515 F.3d 1372 (Fed. Cir. 2008), and in consideration of all papers and proceedings herein, it is hereby

**ORDERED** that plaintiffs' motion for judgment upon the agency record is hereby GRANTED in part and DENIED in part; it is further

**ORDERED** that the amended final less-than-fair-value ("LTFV") determinations that were contested in this case, *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145 (Feb. 1, 2005), *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Brazil*, 70 Fed. Reg. 5143 (Feb. 1, 2005), *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Ecuador*, 70 Fed. Reg. 5156 (Feb. 1, 2005), *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5147 (Feb. 1, 2005), *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the People's Republic of China*, 70 Fed. Reg. 5149 (Feb. 1, 2005), and *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 70 Fed. Reg. 5152 (Feb. 1, 2005), be, and hereby are, declared to be contrary to law because the decisions therein by Commerce to exclude certain dusted shrimp, as defined in the final LTFV determinations, from the scope of the final and amended final LTFV determinations were unsupported by adequate reasoning and therefore were contrary to law; it is further

**ORDERED** that plaintiffs' request for a remand to Commerce of the amended final less-than-fair-value ("LTFV") determinations that were contested in this case is hereby GRANTED; it is further

**ORDERED** that the amended final LTFV determinations that were contested in this case be, and hereby are, remanded to Commerce for reconsideration and redetermination, consistent with this Opinion and Order, of the scope of those determinations with respect to the issue of dusted shrimp; it is further

**ORDERED** that plaintiffs' request for a remand directing Commerce to amend the antidumping duty orders on certain frozen warmwater shrimp from the exporting countries be, and hereby is, DENIED without prejudice; and it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Order and Opinion to complete and file its remand redetermination; plaintiffs shall have thirty (30) days from that filing to file comments; and defendant and defendant-intervenors shall have fifteen (15) days after plaintiffs' comments are filed to file any reply.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: July 1, 2009
         New York, New York